**GRIMES COUNTY et al. v. W. L. SLAYTON & CO.  (No. 2905.)**

(Court of Civil Appeals of Texas. Texarkana. May 20, 1924. Rehearing Denied May 29, 1924.)

**1. Estoppel ⟨⇒⟩62(3) — County not estopped from pleading lack of power to issue bonds or refunding warrants, where restricted by Constitution and statute.**

Where there is a total want of power by a county to issue bonds or refunding·warrants, by virtue of constitutional or statutory restrictions, county is not estopped from pleading such lack of power, even against a bona fide holder.

**2. Counties ⟨⇒⟩164, 173(2)—Bonds or warrants issued in excess of constitutional limitations are void.**

Bonds or warrants issued in excess of constitutional limits are void, since purchaser thereof must take notice of constitutional and statutory limitations on county indebtedness, orders of commissioners' court, and official assessments showing valuation of taxable property within county.

**3. Estoppel ⟨⇒⟩62(3)—When county may be estopped from questioning validity of bonds or warrants as against bona fide purchaser.**

Where a county issues bonds or refunding warrants which are irregular and not in conformity with law, but not ultra vires, or from a total want of power to issue, county can be estopped from questioning and pleading their invalidity against a bona fide purchaser.

**4. Counties ⟨⇒⟩169—Authorized to issue refunding warrants, notwithstanding existing orders for tax levies in excess of legal limit.**

At the time $40,000 of refunding road and bridge warrants were issued, commissioners' court had the power to levy a maximum tax rate of 15 cents on the $100 valuation of the county's taxable property for road and bridge purposes,·and orders of the commissioners' court, providing for annual payment of interest and sinking fund on outstanding bonds and refunding warrants; had set aside 23 cents against the road and bridge tax for such purpose, but the levy of the maximum rate of 15 cents was then more than sufficient annually to· raise enough to satisfy the interest and redemption fund required for bonds and warrants, including the $40,000 issue. *Held,* that a finding that the $40,000 issue could have been legally issued by the county was warranted, as the commissioners' court was authorized to revise or modify prior orders fixing tax rates for interest and sinking fund for issues of bonds and warrants, and such revising order would relate back and become part of each issue of indebtedness.

**5. Counties ⟨⇒⟩192—Commissioners' court has power to revise prior orders fixing tax rate raising interest, and sinking funds for bonds and refunding warrants.**

Commissioners' court has power to revise orders made by commissioners' courts sitting at prior terms, fixing a tax rate or per cent. to raise annual interest and sinking fund required for bonds and·refunding warrants; such act being purely ministerial.

Appeal from District Court,. Grimes County; Carl T. Harper, Jr., Judge.

Action by W. L. Slayton & Co. against Grimes County and others. Judgment for plaintiff, and defendants appeal. Reformed and affirmed. ⟩

W. L. Slayton is the holder and owner of an issue of 80 refunding warrants of the denomination of $500 each, numbered consecutively from 1 to 80 inclusive, aggregating $40,000, and bearing interest at the rate of 6 per centum per annum from their date, issued by the commissioners' court of Grimes county on April 11, 1916, and due as follows: $1,000 on April 11 of the years 1917 to 1922, inclusive; $1,500 on April 11 of the years 1923 to 1928,. inclusive; $2,000 on April 11 of the years 1929 to 1934, inclusive; $2,500 on April 11 of the years 1935 to 1936, inclusive; $3,000 on April 11, 1937 and 1938; $2,000 on April 11, 1939.

On April 11, 1922, he brought the suit against Grimes county, its county judge, its four commissioners, and its treasurer, to recover against the county all past-due interest and warrants, and for writs of injunction·and mandamus against the county officials, governing the levy, collection, and application of taxes, and for the validation of all the warrants and interest not due. He further pleaded that in the event the warrants sued on or the original demand warrants and scrip refunded were illegal and void, and were not issued for the purposes stated in the order authorizing the issuance of the same, that same were issued in furtherance of a scheme as·a basis for obtaining money to be used for labor performed and material furnished on the public roads of the county, and with the intention of deceiving a prospective purchaser of such refunding warrants, and that the plaintiff was induced and misled to purchase the refunding warrants by the false transcript and statements therewith made and furnished to him by the commissioners' court and officers, evidencing that the refunding warrants were valid obligations against the county, and that legal provision had been made for their payment, and that the county was estopped to assert the invalidity of the warrants. The plaintiff further pleaded that the county used the proceeds of the sale of such refunding warrants to pay off and discharge the original holders of demand warrants and scrip against the county road fund, and that he, as the holder of such refunding warrants and scrip, was entitled to be subrogated to all the rights held by the original holders of the demand warrants and scrip. The plaintiff further pleaded, in·the event the warrants were held

⟨⇒⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

void, that he be allowed a recovery as for money had and received.

The defendants demurred to the petition, generally and specially, and answered by denial, and specially pleaded that the issue of warrants was made against the provisions of the Constitution; that the taxing power of the county for road and bridge purposes had been exhausted; that no legal provision was or could be made for the payment of the debt when it was created; and therefore the warrants were void and unenforceable as an obligation of the county.

A jury was waived, and the cause was tried before the court, and, in keeping with special findings of fact, judgment was entered in favor of the plaintiff against the county for the amount of unpaid principal and interest of warrants due, and for interest on the unpaid principal and interest, and validating the remainder of the series of warrants, and awarding an injunction against the county treasurer, restraining him from paying out any part of 3 per cent. of the road and bridge tax fund levied by the commissioners' court to pay interest and sinking fund of the warrants sued on, for any other purpose than to pay off this judgment, and from paying out any moneys coming into the road and bridge fund of Grimes county from any source which is not at the date of this judgment pledged to the payment of outstanding indebtedness against the road and bridge funds, and commanding the treasurer to pay to the plaintiff all of the taxes coming into the road and bridge fund which he is enjoined from paying out for any other purpose, until the amount due the plaintiff under this judgment shall have been fully paid off, and awarding a mandamus against the commissioners' court, requiring them to levy, assess, and collect such road and bridge taxes as may be necessary to pay off and discharge this judgment and to make provision for the payment of the warrants and interest thereon maturing in the future, to the extent of all the unappropriated taxes which may be levied and collected for road and bridge purposes of the county.

From the evidence it appears that on March 13, 1916, at a regular monthly term of the commissioners' court of Grimes county, the following order was entered on the minutes of the court:

"It is ordered that the clerk of this court issue warrants on the road and bridge fund of Grimes county to: J. G. Browne for the sum of $11,500; A. L. Greenburg Iron Company for the sum of $14,509; Russell Grader Manufacturing Company for the sum of $6,966.82; Austin Bros. for the sum of $7,024.18. Said warrants when so issued to be in lieu of warrants surrendered by the above parties on the road and bridge fund of Grimes county, the warrants first above mentioned bearing date of March 13, 1916, due and payable one year after date, bearing interest at the rate of 6 per cent. per annum."

The above were the warrants refunded into the warrants sued on. The warrant purporting to have been issued to Austin Bros. had existence in point of fact, but the three warrants purporting to have been issued to the other named parties had no existence in fact, and had never been issued to them. Later, on April 11, 1916, the following order was entered on the minutes of the court:

"On this April 11, 1916, the commissioners' court of Grimes county, Texas, convened in regular session, at a regular term thereof, all of the members of the said court being present, to wit [names follow]. On motion of Commissioner A. E. Tuck, seconded by Commissioner S. C. Gartman, the following order and resolution was unanimously passed:

"Resolution and Order.

"Providing for the issuance of warrants of Grimes county, Texas, in the sum of forty thousand dollars ($40,000) for the purpose of funding and paying off certain outstanding road and bridge warrants of said county heretofore issued and now held by J. A. Arlitt, of Austin, Texas.

"Whereas, there has heretofore been issued warrants of Grimes county, Texas, to various contractors in payment for work and material in the construction of roads and bridges in said county, which warrants in the sum of $40,000 are still outstanding, and are now owned and held by J. L. Arlitt of Austin, Texas; and

"Whereas, all of said warrants were issued pursuant to contracts which provide that such warrants bear interest in no case less than six per centum per annum, and which warrants all bear interest as provided in said contracts; and

"Whereas, said road and bridge warrants mature faster than same can be paid from the funds provided for such purpose; and

"Whereas, J. L. Arlitt has agreed to surrender said warrants for cancellation and receive in exchange therefor new warrants of said county maturing as hereinafter provided; and

"Whereas, it is deemed by the commissioners' court of said county to be for the best interest of said county that its said indebtedness be so arranged that same can be paid promptly as same mature; and

"Whereas, only twelve cents of the fifteen cent tax on the one hundred dollars valuation authorized by section 9 of article 8 of the Constitution for roads and bridges has been appropriated, leaving unappropriated three cents of said road and bridge tax;

"Now, therefore, be it resolved and ordered by the commissioners' court of Grimes county, Texas, that for the purpose of funding the indebtedness evidenced by the outstanding road and bridge warrants of said county owned and held by J. L. Arlitt, of Austin, Texas, there be issued new warrants of said county in the sum of $40,000 as hereinafter provided. Said issue shall consist of 80 warrants of the denomination of $500 each, to be numbered consecutively from one to eighty, inclusive, dated April 11, 1916, and shall become due and payable: [Here follow description, form, etc.].

"The county judge and county clerk are hereby authorized and directed to execute said warrants, and when executed and registered by the county treasurer they shall deliver same to the

said J. L. Arlitt, of Austin, Texas, in exchange for said road and bridge warrants, whereupon said road and bridge warrants shall be canceled.

"It is further resolved and ordered that to provide for the payment of the interest on said warrants as it accrues and for the payment of said warrants at maturity, there shall be and there is hereby levied for the year 1916, and for each succeeding year during which said warrants or interest coupons may be outstanding and unpaid, a direct annual tax of three cents on the one hundred dollars valuation upon all the taxable property in said county, which tax as collected shall be placed in a special fund to be designated 'Special Time Warrant Fund, Class No. 1–A,' and shall be used solely for the payment of the principal and interest of said warrants."

The refunding warrants authorized by the above order were issued on April 11, 1916, and made payable to J. L. Arlitt, his assigns or bearer. On April 17, 1916, J. L. Arlitt effected a sale of the said warrants to appellee W. L. Slayton, of Toledo, Ohio; he paying therefor 97½ cents on the principal and accrued interest. Out of the proceeds of the sale of such refunding warrants, the sum of $32,975.82 was deposited in the First National Bank of Anderson, Tex., to the credit of Grimes county road and bridge fund account. The deposit in the bank was made, as appears, on "April 22, 1916." The money so deposited was paid, as appears, by a check drawn by Frank Austin on Austin Bros., Dallas, Tex. The $32,975.82 added to the Austin Bros. warrant totals $40,000. On April 24 and 25, 1916, the $32,975.82 deposited in the bank was used by the county to pay off outstanding road and bridge demand warrants, and scrip that had been issued in varying amounts from $1 up, from November, 1915, to March 13, 1916, for material furnished and labor done on the roads and bridges of the county before the demand warrants and scrip were issued. At the time of the issuance of the refunding warrants there was outstanding against the road and bridge fund not provided for about $30,000 in demand warrants, and there were no funds with which to pay these warrants from the 1915 or 1916 tax levy, and no other funds of the commissioners' court out of which they could be paid, and the total delinquent tax due the county for all purposes for all time was $18,537.16. The following special facts are found by the trial court:

"I find that in pursuance of and as a means of carrying out said scheme, that the said J. L. Arlitt prepared forms for a certified transcript to be furnished to any prospective purchaser who desired to purchase said funding warrants, and that said forms consisted of certified copies of orders of the commissioners' court providing for the issuance of the funding warrants, a statement of the county's financial condition, and forms of the proposed warrants to be issued, and of the tax assessor certifying the taxable values of said county, and that the commissioners' court, county judge, county clerk, county treasurer, and county tax assessor duly signed and swore to the facts stated in said transcript, and certified that the facts stated therein were true and correct, and that said transcript was prepared in furtherance of said scheme and device to lead the purchaser of said funding warrants to believe that the same constituted valid and binding obligations against Grimes county. I find that upon the completion of said certified transcript the same was delivered by the county to its agent and coconspirator, J. L. Arlitt, and that the said J. L. Arlitt negotiated a sale of said funding warrants to the plaintiff herein, and upon demand by the plaintiff for a certified transcript of the proceedings had in the issuance of said warrants, the said J. L. Arlitt, acting as the agent of said county, presented said certified transcript to the plaintiff herein, said transcript being attached to the deposition of W. L. Slayton and is made a part of this finding, the same as if copied herein."

The court further finds that the appellee had the transcript examined by an experienced and capable attorney, who gave an approving opinion upon the purchase of the warrants; and that appellee had no notice or knowledge that the warrants recited to be refunded were fictitious, or that any of the recitals in the certified transcript were not true.

The evidence is undisputed that before the performance of the work or the furnishing of the materials or the issuance of the demand warrants and scrip and the funding warrants sued on there were outstanding road and bridge bonds and interest-bearing warrants for road purposes, and the commissioners' court had made provision for payment of same as follows: (1) On August 14, 1899, bonds were issued for the purpose of constructing bridges, in the total sum of $9,000, bearing 4 per cent. interest, maturing in 20 years, and the order set aside 4-cent tax rate to pay interest and create a sinking fund for redemption of the bonds; (2) on June 8, 1914, bonds were issued for construction of bridges, in the total sum of $40,000, bearing 5½ per cent. interest, maturing in 20 years, and the order set aside 3½-cent tax rate to pay interest and create a sinking fund for redemption of the bonds; (3) on August 10, 1914, bonds were issued for constructing roads, in the total sum of $30,000, bearing 5½ per cent. interest, maturing in 30 years, and the order set aside 2¼-cent tax rate to pay interest and create a sinking fund for redemption of the bonds; (4) on December 14, 1914, bonds were issued for the purpose of constructing roads, in the total sum of $30,000, bearing 6 per cent. interest, maturing in 20 years, and the order set aside 2¾-cent tax rate to pay interest and create a sinking fund for redemption of the bonds; (5) on June 15, 1915, there were issued funding warrants, for purposes of road maintenance, in the total sum of $20,--

000, bearing 6 per cent. interest, maturing annually for 12 years, and the order set aside 4-cent tax rate to pay interest and to redeem the warrants; (6) on September 15, 1915, there were issued funding warrants, for purposes of road maintenance and construction, in the total sum of $25,000, bearing 6 per cent. interest, maturing annually for 18 years, and the order set aside 4-cent tax rate to pay interest and to redeem the warrants; (7) on October 15, 1915, funding warrants, for purposes of road construction, were issued, in the total sum of $20,000, bearing 6 per cent. interest, maturing annually for 16 years, and the order set aside 2½-cent tax rate to pay interest and to redeem the warrants. There had been paid on the bond issue of August 14, 1899, the interest and $6,000 of the principal, and in 1916 there was unpaid $3,000 of the principal. On July 11, 1916, at a regular term, the commissioners' court entered on the minutes the following order:

"There shall be levied and collected an ad valorem tax (for county revenue purposes) of twenty-five (25) cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a road and bridge bond interest and sinking fund tax for bonds dated June 8, 1914, of 2½ cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a road and bridge bond interest and sinking fund tax of 2 cents on the one hundred dollars valuation of assessed property for bonds dated August 10, 1914.

"There shall be levied and collected a road and bridge bond interest and sinking fund tax for bonds dated December 14, 1914, of 2 cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a road and bridge tax for county funding warrants dated June 15, 1915, of 2 cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a road and bridge tax for county funding warrants dated September 15, 1915, of 2 cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a road and bridge tax for county funding warrants dated October 15, 1915, of 2 cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a road and bridge tax for county funding warrants dated April 11, 1916, of 2½ cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a court-house tax of 5 cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a jail tax of 5 cents on the one hundred dollars valuation of assessed property.

"There shall be levied and collected a jury tax of 5 cents on the one hundred dollars valuation of assessed property."

The trial judge made the following finding:

"I further find that, at the time the original warrants made the basis for the issuance of the warrants sued upon were purported to have been issued, the county had a taxable power for road and bridge purposes of 15 cents, and that, after taking into consideration the outstanding indebtedness against the said county at said time, said warrants could have been legally issued had the same been issued for the purpose recited, and had a tax sufficient to pay the interest and provide a sinking fund to mature the principal been levied at said time."

The taxable values of Grimes county for the year 1915, as shown by the approved tax rolls, were $12,280,408.

The court concluded, as a matter of law:

"I therefore conclude that Grimes county is estopped to assert the invalidity of said warrants, and that the plaintiff is entitled to recover from defendant the amount of unpaid principal and interest, and interest on the unpaid principal and interest, and to a judgment validating the remainder of said series of warrants, and to a permanent injunction against the county treasurer, and to a mandamus against the commissioners' court as prayed for."

Buffington & Leigh, of Anderson, for appellants.

Merritt & Leddy and W. M. Harris, all of Dallas, and E. A. Berry, of Houston, for appellee.

LEVY, J. (after stating the facts as above). [1-3] The court rested the judgment in favor of the appellee upon the special grounds: (1) That, although the refunding warrants, as well as the original indebtedness, were not in conformity with the law and were invalid, yet the circumstances concerning the issuance and sale of the refunding warrants were of a nature sufficient to work and to predicate estoppel upon the county from questioning and pleading their invalidity between it and a bona fide purchaser for value, as was the appellee; and (2) that estoppel was available to the appellee as a remedy, as pleaded, for (a) the refunding warrants were not absolutely void for a lack of any authority to issue them in the first instance, because, as a fact, at the time of the creation of the indebtedness and the issuance of the said warrants, there was available to the county a sufficient road and bridge tax to raise the annual interest and sinking fund required, and (b) there was not failure of consideration, as the county received the full proceeds of the sale of the refunding warrants and used same to pay off and discharge demand warrants and scrip against the road and bridge fund for labor and materials actually performed and furnished "on the roads and bridges of said county." The propositions stated in the appellants' brief in effect center upon the points in view that, as it was conclusively established by the recorded orders of the commissioners' court

and the evidence that the county had previously appropriated and exhausted, and had exceeded, the full 15-cent tax limit provided by the Constitution for road and bridge purposes at the time the refunding warrants in suit were issued and the original indebtedness was created, there was a total want of power in the county to further borrow money by promised special taxation in the future against the road and bridge fund, and therefore estoppel could not be predicated against the county from questioning and pleading such want of power, although the refunding warrants were held and sued on by a bona fide purchaser. If it conclusively appears as a fact, as contended by appellants, that the county had appropriated and exhausted the full tax to the maximum amount allowed by the Constitution of the state for road and bridge purposes of a county, at the time of the issuance of the refunding warrants sued on, then, obviously, there was a total want of power on the part of the county, acting through the commissioners' court, to issue the refunding warrants against the road and bridge fund, and as well to create the original indebtedness payable in the future. Where there is a total want of power on the part of a county to issue bonds or refunding warrants, in virtue of constitutional or statutory restrictions, the county will in no case be estopped from questioning and pleading such lack of power, even against a bona fide holder. Citizens' Bank v. City of Terrell, 78 Tex. 450, 14 S. W. 1003; Bridge Co. v. City of San Antonio (C. C.) 62 Fed. 882; Lake County Commissioners v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065. Bonds or warrants issued in excess of constitutional limits are void. Buchanan v. City of Litchfield, 102 U. S. 278, 26 L. Ed. 138. For a purchaser of bonds or refunding warrants is bound to take notice of the constitutional and statutory limitation upon county indebtedness, the orders of the commissioners' court, and as well the official assessments showing the valuation of taxable property within the county. Buchanan v. City of Litchfield, 102 U. S. 278, 26 L. Ed. 138; Ball v. Presidio Co., 88 Tex. 60, 43 S. W. 1042. And as well are courts without power, as a fundamental principle of law, to validate and enforce by a judicial decree an excessive indebtedness, evidenced by bonds or warrants or otherwise, which the Constitution expressly prohibits or forbids a county from incurring. A judicial decree enforcing by mandamus the levy and collection of a tax which in effect exceeds the constitutional limit of taxation for the special purposes, and which excess is forbidden by the Constitution, operates to be violative of the constitutional restriction, as much so as would be the act of the commissioners' court in attempting the illegal issue and to enforce payment of the same by the levy and collection of an unconstitutional tax. However, under a thor-

oughly settled rule, where a county issues bonds or refunding warrants which are irregular and not in conformity with law, but not ultra vires, or from a total want of power to issue, the county can be estopped, if warranted by the evidence, from questioning and pleading their invalidity between it and a bona fide purchaser. Nolan County v. State, 83 Tex. 183, 17 S. W. 823; City of Tyler v. Building & Loan Ass'n, 99 Tex. 6, 86 S. W. 750; Town of Coloma v. Eaves, 92 U. S. 484, 23 L. Ed. 579; Dallas County v. MacKenzie, 94 U. S. 660, 24 L. Ed. 182; Dixon County v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360; Cairo v. Zane, 149 U. S. 122, 13 Sup. Ct. 803, 37 L. Ed. 673; Hitchcock v. City of Galveston, 96 U. S. 341, 24 L. Ed. 659; Slayton & Co. v. Panola County (D. C.) 283 Fed. 330.

[4, 5] In the present record there is no conflict in the testimony pertaining to the question considered. The order of the commissioners' court directing the issuance of the refunding warrants, as well as the refunding warrants themselves, contains the recital, and such recital is true in point of fact, that such warrants were issued as and were payable as "road and bridge warrants." The order of the commissioners' court provides that—

"For the payment of the interest on said warrants, as it accrues, and for the payment of said warrants at maturity, there shall be and there is hereby levied for the year 1916, and for each succeeding year during which said warrants or interest coupons may be outstanding and unpaid, a direct annual tax of 3 cents on the $100 valuation upon all the taxable property in said county."

At the time of and long before the issuance of the refunding warrants in April, 1916, and the creation of the original indebtedness beginning in November, 1915, there existed the power in the commissioners' court of Grimes county to levy a tax rate, as the maximum rate allowed by law, of 15 cents on the $100 valuation of the taxable property of the county for road and bridge purposes. The county had not voted an additional tax. The assessed valuation of property at the time was $12,202,840. There were outstanding road and bridge bonds in the sum of $103,000, and outstanding interest-bearing refunding warrants against the road and bridge fund in the sum of $65,000. All of this indebtedness was due long after the year 1916. And, as conclusively shown by the orders of the commissioners' court, provision had been made for the annual payment of the interest and sinking fund on the outstanding bonds and refunding warrants. The face of the original orders, made at the time of the issuance of the different series, considered all together, show, as can be seen from the orders, that the total sum of 23 cents against the road and bridge tax had been formerly set aside to pay the interest and to create the

sinking fund of these different series. But in point of fact, as a mere matter of calculation, the levy of a total tax rate of 15 cents, the maximum rate allowed by law, was more than sufficient to annually raise, in view of the official assessment of the taxable property in the county at the time and continuing since, the amount of money necessary to satisfy the interest and redemption fund required for all such bonds and refunding warrants. And in virtue of this fact the commissioners' court, in July, 1916, at a regular term, in effect revised and modified the former orders fixing the tax rate so far as to fix and levy a somewhat lower tax for the year of 1916, as sufficient to raise the interest and sinking fund of all the outstanding series of bonds and refunding warrants, including the warrants in suit. In the order of July, 1916, the total tax rate fixed and levied for all road and bridge indebtedness was in the total sum of 15 cents, which amount did not exceed the maximum allowed by law. In point of fact, as a matter of calculation, the total 15-cent tax on the assessed valuation of the property would in itself be sufficient to raise $18,420.61, which would provide the interest and sinking fund for the outstanding refunding warrants and bonds, and pay in full the $3,000 principal of the bond issue of 1899, and besides leave more than $2,000 surplus. Also the tax rate or per cent., so fixed in such order for each bond and warrant issue, is separately in itself sufficient to raise the annual interest and required sinking fund for each bond and warrant issue. The amount of taxes so undertaken to be raised, considered all together or separately, would in the succeeding years after 1916 exceed, in no inconsiderable sum, the required interest and sinking fund for all the outstanding bonds and refunding warrants, including the refunding warrants sued on.

Therefore it appears in point of fact, as found by the trial court, that the refunding warrants sued on "could have been legally issued" by the county, as within its power to do in the first instance, "after taking into consideration the outstanding indebtedness" and the levy of a tax rate sufficient to pay the interest and to provide the sinking fund required for the same. But this fact can be made legally determinative of the question in the event only that the commissioners' court, sitting in July, 1916, had the power and authority to revise and modify the orders made by the commissioners' court sitting at prior terms, fixing at the time a definite tax rate or per cent., in the nature of a provision, for the payment of the interest and sinking fund required for the different series of bonds and refunding warrants issued. Stating it precisely for illustration: On June 8, 1914, bonds were issued for the construction of bridges in the total sum of $40,000, bearing 5½ per cent. interest, maturing in

20 years; and the order of the commissioners' court provided:

"It is ordered that, to provide for the proper payment of the interest of said bonds, and to constitute and maintain a sinking fund for the payment of the principal and interest thereof at maturity, there shall be and there is hereby levied for the year 1914, and for each succeeding year, during which said bonds or coupons may be outstanding and unpaid, a direct continuing annual tax of 3½ cents on the one hundred dollars valuation on all taxable property in Grimes county, and said tax shall in each of said years be assessed and collected and the proceeds thereof be placed in a special fund to be designated 'Bridge Bonds of 1914, Interest and Sinking Fund,' and shall be used solely for the payment of principal and interest of said bonds."

And in July, 1916, at a regular term, the commissioners' court revised and amended the above order, as well as the others formerly made, to the extent and in the words following:

"There shall be levied and collected a road and bridge bond interest and sinking fund tax for bonds dated June 8, 1914, of two and one-half (2½) cents on the one hundred dollars valuation of assessed property."

It is quite certain that the mere act of fixing a tax rate or per cent. to raise the annual interest and sinking fund required for bonds and refunding warrants is in its nature purely an administrative function, pertaining to the ordinary county business, and may be revised at a subsequent term of the court, unless individual rights are prejudicially affected and changed thereby. 11 Cyc. p. 402; 15 C. J. p. 470. To that effect is the holding in Bassett v. City of El Paso, 88 Tex. 168, 30 S. W. 893. In that case, as stated:

"The first question presented is, Was it necessary, under the law, for the council to actually levy a tax running through the period of 30 years until the maturity of the bonds, at the time of providing for their issuance?"

The court answered the question, construing the Constitution and laws, that—

"The language and purpose of these provisions seem to be satisfied by an order providing for the annual collection by taxation of a 'sufficient sum to pay the interest thereon and create a sinking fund,' etc., though it does not fix the rate or per cent. of taxation for each year by which such sum is to be collected, but leaves the fixing of such rate for each successive year to the commissioners' court or city council. To so construe these provisions as to require, at the time the debt is created, the levy of a fixed tax to be collected through a long series of years, without reference to the unequal 'sums' that would in all probability be realized therefrom, instead of the collection annually of a certain 'sufficient sum' to pay the annual interest and create the sinking fund required by law, would be doing violence to the language used, and authorize, in cases where land values rapidly increase, the extortion from the

taxpayers of large amounts of money in excess of the amount necessary to satisfy the interest and principal of the bonds, and this, in turn would invite municipal corruption and extravagance. * * * It would be the duty of the city council annually to levy a tax sufficient to collect the same, which duty the bondholder could enforce, but the validity of the bonds could not be affected by the failure or refusal to levy such tax, or by the levy of an insufficient tax during any year."

Where the original order of the commissioners' court provides in terms for the annual levying and collecting of a tax to pay the interest on the bonds issued thereunder and to create a sinking fund for their redemption, the "ascertaining the sum to be collected, and the rate per cent. necessary to be levied upon the taxable values of the county each year," is a "ministerial act," and "the performance of this duty the district court had the authority to enforce by writ of mandamus." Mitchell County v. City National Bank, 91 Tex. 361, 43 S. W. 880. Therefore we think the court's conclusion, being warranted by the evidence and the law, should be sustained. The order of July, 1916, revising and apportioning a tax rate or per cent. to each series of outstanding indebtedness, operates to be a rescission and modification of the former orders, to the extent only of an annual tax rate, and such order would relate back and become a part of the contract of each series of indebtedness, including the one sued on.

We have considered all the assignments of error made, and think they should be overruled.

Acting on our own motion, we think that the judgment of the trial court should be reformed so far as it authorizes the levy "of 3 cents of the 15-cent road and bridge tax," so as to authorize 2½ cents, as provided in the order of July, 1916. As so reformed, the judgment will in all things be affirmed.