## SECURITY STATE BANK OF SAN JUAN v. STATE.

### No. 4047.

Court of Civil Appeals of Texas. El Paso.

Nov. 28, 1940.

L. J. Polk, of Pharr, and W. H. Gossage, of San Juan, for appellant.

H. L. Hall, of Edinburg, for appellee.

PRICE, Chief Justice.

This action was instituted in the District Court of Hidalgo County, Texas, by the State of Texas, as plaintiff, suing in its own behalf, and also in behalf of Hidalgo County, Hidalgo County Road Districts Nos. 1, 3, 4 and 8, Hidalgo County Old Road District No. 1, Hidalgo County Drainage District No. 1, and any and all political subdivisions of said county in which the property described in the petition, or any part thereof, is situated and whose taxes were assessed and collected

by the Assessor and Collector of Taxes of Hidalgo County, against Security State Bank of San Juan, a corporation. The suit was for taxes. Defendant duly filed its answer, and the trial was before the court, resulting in a judgment in favor of the plaintiff against the defendant for the taxes sued for, with foreclosure of liens as sought by plaintiff. The defendant duly perfected appeal from this judgment, and the case is here for review.

The parties will be here designated as they were in the trial court.

Plaintiff concedes that the statement of defendant of the nature and result of the suit is correct in so far as same goes, but makes in its brief a statement supplementary thereof. These statements are somewhat long and involved due to the nature and character of the issues involved. We shall literally adopt the respective statements of the plaintiff and defendant.

On the 13th day of September, 1937, the Commissioners' Court of Hidalgo County, all members present, in regular meeting assembled, made and caused to be entered its order duly levying taxes for the year 1937 within and for Hidalgo County, and its taxable subdivisions, including Road Districts Nos. 1 to 8, both inclusive, and Old Road District No. 1 of Hidalgo County, and Hidalgo County Drainage District No. 1, and Common School Districts Nos. 1, 2, 9, 14, 17 and 19; on December 31, 1937, appellant paid unto the Tax Collector of Hidalgo County all the taxes for the year 1937, amounting to the sum of $481.31, due and owing upon and against the lands owned by it involved in this suit; a part of the taxes so levied by the Commissioners' Court, as aforesaid, was for the servicing of refunding bonds that had been duly approved by decree of the United States District Court for the Southern District of Texas, made

and entered prior to September 13, 1937; on the 7th day of January, 1938, said Federal Court, in proceedings instituted by the bondholders and others, commanded the Commissioners' Court of Hidalgo County, "at a regular term of said court to be convened on the 10th day of January, 1938, to prepare and pass such proceedings as are necessary, and to take such steps in connection therewith as are expedient, to amend and correct the order entered by it on the 13th day of September, 1937, which fixed a rate of 35¢ per each $100.00 assessed taxable property in said County, assessed for State purposes, and 2½¢ per each $100.00 of assessed taxable value in said County, assessed for County purposes, making a combined levy of 37½¢ for the Water Improvement Refunding Bonds, Series 1936, in such manner as to provide a rate of levy of 35¢ on the $100.00 assessed taxable property in said County, assessed for State purposes, and 34.02¢ on each $100.00 of assessed taxable property in said County, assessed for County purposes, making a combined levy of 69.02¢ on each $100.00 valuation of taxable property for said bonds, * * *"; on the 3d day of January, 1938, said Federal Court, in proceedings instituted by the bondholders and others, commanded the Commissioners' Court of Hidalgo County to "cause a regular term of said court to be convened and there pass a legal and proper order setting aside the order that it passed on the 13th day of September, A. D. 1937," fixing the levies for the eight respective road districts of Hidalgo County, aforesaid, and to pass another legal and proper order fixing the rates of the tax levies for the eight respective road districts, based upon the valuation in each respective road district, as already fixed for the year 1937 by said court, in the following amounts:

| Road District Number: | Rate Per $100.00 Valuation as Fixed by Federal Court by Its Order of Jan. 3, 1938: | Rate Per $100.00 Valuation, as Had Already Been Fixed by the Commissioners' Court by its Order of Sept. 13, 1937: |
|---|---|---|
| 1 | $1.50 | $1.14 |
| 2 | $1.63 | $1.21 |
| 3 | $2.51 | $1.73 |
| 4 | $2.45 | $1.65 |
| 5 | $1.47 | $1.10 |
| 6 | $1.02 | $0.85 |
| 7 | $2.07 | $1.35 |
| 8 | $2.08 | $1.38 |

The Commissioners' Court of Hidalgo County, acting under compulsion of the two orders of the Federal Court hereinabove mentioned, did, at a meeting thereof held on January 10, 1938, set aside, cancel and rescind the levies that had theretofore by it at its meeting of September 13, 1937, been duly and regularly made and substituted therefor the levies made and commanded to be made by the Federal Court, which were largely in excess of the regular levies made by the Commissioners' Court at its September, 1937, meeting and thereafter the additional tax was demanded to be paid of appellant and upon appellant's refusal to pay same this suit was brought to enforce payment; the trial court rendered judgment for appellee for the additional tax sued for, from which judgment this appeal was duly perfected and the matter is now before this court for review.

Defendant's supplementary statement is as follows:

This action, instituted by appellee, was an ordinary tax suit. Appellant in its first-amended original answer pleaded payment of the taxes sued for and that it held a receipt for the same regularly issued, and further that the taxes were levied and assessed without lawful authority, were uncollectible and no lien existed to secure payment thereof.

Appellee in its first supplemental petition alleged that Road Districts Nos. 1, 3, 4 and 8 of Hidalgo County and Hidalgo County Drainage District No. 1 were duly and legally created; and the manner in which indebtedness was originally created by the issuance of various bonds of such road districts and by such drainage district; that to provide for the payment of said bonds provisions were made for a tax to be levied, assessed and collected upon all taxable property within each of said districts to provide a fund sufficient to pay the annual interest on said bonds and provide for a two per cent sinking fund and in the case of said drainage district bonds, with full allowance for delinquencies and costs of collection; that each of said road districts and drainage district subsequently defaulted in interest payments on said bonds and various suits were instituted on the bonds of each of said districts in the District Court of the United States for the Southern District of Texas, Brownsville Division; based on such suits refunding agreements were eventually entered into between Hidalgo County and the holders of the

bonds of said road districts and drainage district which agreements were subsequently validated by decrees of the Federal Court in each of said cases. The refunding agreements provided that during the life of the refunding bonds, a tax should be levied, assessed and collected each year on all property within each of said districts at such rate from year to year sufficient to pay the current interest on such bonds and provide a two per cent sinking fund with full allowance to be made for anticipated tax delinquencies and costs of collection and in no year should such levy be less than an amount sufficient to pay current interest on the refunding bonds and provide a sinking fund at least equal to two per cent of the refunding bonds, together with a reasonable amount in addition thereto covering anticipated tax delinquencies and costs of collection, and the same provision was embodied in the final judgment in the Federal Court in such cases. Pursuant to such refunding agreements and judgments the Commissioners' Court of Hidalgo County duly passed an order levying such a tax and providing that the same should be assessed and collected each year upon such property and further providing that in addition to all of the rights provided by said new refunding bonds the holders thereof shall be subrogated to all the rights of the holders of the original indebtedness so refunded except as otherwise specifically provided by such order and such refunding agreements. Said refunding bonds were duly issued, approved, registered and exchanged for the original bonds, and it thereupon became the duty of the Commissioners' Court to annually determine the rate per cent of tax to be levied for such purposes and levy a tax in such amount; that the original levy for 1937 was made on or about the 13th day of September, 1937, and prior to such time the holders of the refunding bonds requested the Commissioners' Court to make a tax levy in excess of the rates fixed in the order passed by the Commissioners' Court on September 13, 1937, taking the position that such levies would not be sufficient to provide the fund required by the refunding agreement and judgment of the Federal Court; subsequently contempt proceedings were instituted in the Federal Court against the Commissioners' Court, County Judge, and County Auditor, of Hidalgo County, in which it was alleged that said officials had failed to comply with the contractual obligation to levy a sufficient

tax as set forth in said agreements and had further failed to observe and obey the order of the Federal Court in the case which resulted in the refunding of the bonds of said four road districts and drainage district; that at the request of the Commissioners said contempt proceeding was continued until January 3, 1938, and at such time on trial the Court held the County Commissioners, County Judge, and County Auditor, in contempt, providing that they could purge themselves of such contempt by doing various things, among which was to raise the rate of tax levied for 1937 as set forth in the statement of the nature and result of the suit made by appellant, which was accordingly done by the Commissioners' Court, and pursuant to such action and such order of the Federal Court the Assessor and Collector of Taxes of Hidalgo County extended such supplemental or additional levy on his rolls for such year.

The plaintiff further alleged that defendant was duly represented in all of the legal proceedings above mentioned by the County Judge, the County Auditor and the County Commissioners and is bound by the final judgments and decrees entered in each of said proceedings including the decrees in the contempt proceedings; that the Commissioners' Court was under a contractual duty to levy a tax for the year 1937 as above set out and was under a judicial mandate of the Federal Court to fix such a rate per cent of tax for 1937 as would pay the interest·for such year on the bonds and a two per cent sinking fund, taking into consideration delinquencies and costs of collection and other contingencies expressed therein, and that all issues raised and determined in all of said proceedings are binding upon defendant, and the conduct and action of the Commissioners' Court in increasing or supplementing said levies pursuant to said judgments and.decrees were and are binding and res adjudicata as to defendant. Plaintiff further pleaded that at the time defendant paid its taxes based on the rate originally fixed it knew or was charged with notice of the pendency of the contempt proceedings and with the provisions of the refunding agreements and decrees and that payment of such amount would not and could not operate as legal payment and discharge of its tax liability for 1937. Plaintiff further alleged that defendant was estopped to claim full payment of its 1937 taxes and discharge of the lien securing the same,

and in so doing defendant claimed itself entitled to a remission or relinquishment of taxes legally due, contrary to the express provisions of the Constitution of the State of Texas.

Plaintiff prayed judgment for the amount of taxes claimed in its original petition with the allowance of proper credit because of the payment of a portion thereof by defendant on December·31, 1937, for foreclosure of its tax lien, and for general relief.

· Defendant filed its first supplemental answer consisting of a general demurrer and general denial.

The case was tried before the Court without a jury and final judgment rendered on February 21, 1940. The judgment was in favor of plaintiff for the taxes, penalty and interest provided by law as sued for by plaintiff with allowance being made for the· sum paid on December 31, 1937 by defendant and for foreclosure of the tax lien.

■ Appellant makes one assignment of error, which it also submits as a proposition: "The trial court erred in rendering judgment for the appellee for the reason that the decrees of the United States District Court for the Southern District of Texas commanding the Commissioners' Court of Hidalgo County to make the new and additional levies, and the order of said Commissioners' Court made on January 10, 1938, in compliance with the command of the Federal Court, rescinding and cancelling the 1937 tax levy that had been duly made by said court at its September, 1937, meeting and levying a new and additional tax for the year 1937, being each and all, at the time they were made, repugnant to and in direct violation of Section 16, Article 1, of the State Constitution, were illegal, void and unenforceable and no valid obligation on the part of any property owner to pay such additional taxes sought to be imposed was created."

The facts in this case are practically undisputed. The pleadings, as summarized in the statement of the nature and result ·of this case, in so far as they state facts as distinguished from conclusions, represent the. facts involved.

It was stipulated in substance that, if the order of the Commissioners' Court of January 10, 1938 increasing the rate of taxation for 1937 was valid and binding, plaintiff was entitled to judgment for such

increased amount. Urged against the validity of the action taken is Section 16 of Article 1 of the Constitution, Vernon's Ann. St., which is as follows: "No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."

In short, it is contended that the order in question was a retroactive law within the meaning of the above-quoted section of the Constitution.

In the course of the opinion in the case of Keith v. Guedry, Tex.Civ.App., 114 S.W. 392, 396, it was said: "A 'retroactive law' is one made to affect acts or transactions occurring before it came into effect, or rights already accrued, and which imparts to them characteristics, or ascribes to them effects, which were not inherent in their nature in the contemplation of the law as it stood at the time of their occurrence. It gives a right where none before existed, or takes away one which before existed." Sutherland v. De Leon, 1 Tex. 250, 46 Am. Dec. 100; De Cordova v. Galveston, 4 Tex. 470; State v. Galveston, H. & S. A. R. Co., 100 Tex. 153, 97 S.W. 71.

Referring to the constitutional provision we have under consideration, it was further said: "However, this provision has been construed by the courts of this state, and of some other states having like constitutional inhibitions, only as a restriction upon the power of the Legislature, to pass such laws as impair the obligation of contracts, divest vested rights, such as exceed the general powers of the Legislature or invade the province of the other departments of government."

In the light of the above definition formulated by that great jurist, Judge Neill, let us then consider the situation here presented. Beyond question the bonds are valid and legal obligations of the respective districts. By the law authorizing the creation of such obligations and by contract, it was the obligation of each district to cause to be levied, assessed and collected, a tax sufficient to service the bonds and provide a sinking fund for their final payment. The bonds in question here are refunding bonds; the orders of the Commissioners' Court made at the time of their issuance may vary slightly as to the matters hereinafter discussed, but in reality are substantially the same. A portion of one of such orders as being in material particulars the same as to all is here quoted "While said refunding bonds or any

of them are outstanding and unpaid, there shall be, and is hereby levied, and there shall be assessed and collected, in due time, form and manner, a tax upon all taxable property in said County of Hidalgo, Texas, for each year, at such rate from year to year as will be sufficient to pay the current interest on said refunding bonds from time to time as the same falls due, and provide the constitutional sinking fund. That during each of the years 1936 to 1958, both inclusive, said tax shall not be less than an amount which will produce a sum sufficient to pay the current interest on said refunding bonds, and in addition thereto provide an annual sinking fund in an amount not less than Sixty One Thousand Seven Hundred Eighty Two and 60/100 ($61,782.60) Dollars (being one twenty-third (1/23) of the principal amount of the refunding bonds authorized thereby), and a reasonable additional amount sufficient to cover anticipated tax delinquencies, which additional amount shall be based upon the average tax collections during the three preceding years— and said tax shall each year be assessed and collected and applied to the payment of the interest on said refunding bonds as the same falls due, and to provide the requisite sinking fund for same; provided that in each of the years 1936 to 1948, both inclusive, such levy shall not be less in any event than thirty-five cents (35¢) on each one hundred dollars ($100) assessed valuation of all taxable property within Hidalgo County, Texas."

Before the issuance of these refunding bonds there had been a suit in the Federal Court for default by the districts on the basic bonds. The refunding bonds were issued in settlement of this suit. The above contract for their issuance was approved by the decree of the Federal Court in which the various suits were pending. The United States District Court in each decree purported to retain jurisdiction, as recited in the decree, "to make such further orders and to grant such further writs, processes and relief as may be necessary or appropriate from time to time to effectuate and enforce the terms of this decree." The following quoted provision in one of the decrees is in a general sense typical of each:

"While said refunding bonds or any of them are outstanding and unpaid, there shall be, and is hereby levied and there shall be assessed and collected, in due time, form and manner, a tax upon all taxable

property in said County of Hidalgo, Texas, for each year, at such rate from year to year as will be sufficient to pay the current interest on said refunding bonds from time to time as the same falls due, and provide the constitutional sinking fund. That during each of the years 1936 to 1958, both inclusive, said tax shall not be less than an amount which will produce a sum sufficient to pay the current interest on said refunding bonds, and in addition thereto provide an annual sinking fund in an amount not less than Sixty One Thousand Seven Hundred Eighty Two and 60/100 ($61,782.60) Dollars (being one twenty-third (1/23) of the principal amount of the refunding bonds authorized hereby), and a reasonable additional amount sufficient to cover anticipated tax delinquencies which additional amount shall be based upon the average tax collections during the three preceding years and said tax shall each year be assessed and collected and applied to the payment of the interest on said refunding bonds as the same falls due, and to provide the requisite sinking fund for same; provided that in each of the years 1936 to 1948, both inclusive, such levy shall not be less in any event than thirty-five cents (35¢) on each one hundred dollars' ($100.00) assessed valuation of all taxable property within Hidalgo County, Texas.

"All interest and sinking fund moneys shall at all times be deposited in a depository bank qualified to accept deposits of any county funds and any and all such deposits shall be properly secured as provided by the laws of the State of Texas pertaining thereto.

"In addition to all other rights secured to them, the holders of said refunding bonds, or of any of said refunding bonds are subrogated to all the rights, remedies and privileges against Hidalgo County, Texas, had and possessed by the holders of the original indebtedness above described."

Prior to the order of September, 1937 of the Commissioners' Court fixing the rate of taxation the various bondholders requested a larger proportion of the taxes applicable to their bonds than was made by the order of that date. They filed a petition in the said pending causes complaining of the order of September 13, 1937, alleging that same was in violation of the previous order of the court, in that same was insufficient to care for servicing

the bonds and providing for the sinking fund, and prayed for citation of the County Judge, the Commissioners and County Auditor, for contempt. Such parties appeared and upon hearing were adjudged guilty of contempt. In the order it was provided that they might purge themselves of such contempt by passing an order in substantial conformity with the order of January 10, 1938, and which order is here in controversy.

Beyond any question, it was the duty of each district to assess and collect taxes sufficient to each year service the bonds and to maintain the sinking fund. It does not appear from the record that in 1937 there had been or was thereafter any default in the payment of the interest or maintenance of the sinking fund. That the levy of September 13, 1937 was insufficient for this purpose appears from the order of the United States Court in the contempt proceeding and from the record here.

If, as a matter of fact, the levy of September 13, 1937 was insufficient to service the bonds and maintain the sinking fund, there was a default. A failure to make any levy for the purposes named would be a breach of duty, and likewise an inadequate levy would be such. Such breach of duty was remediable. The only practicable measure was personal coercion of the Commissioners' Court as a functionary of the district.

As has been said, no failure to pay interest or maintain this sinking fund has been shown, and doubtless there has been none. It may be, and we think is true, that the action taken on January 10, 1938 was the means of preventing a default. It is clear that the bondholders were entitled to a levy sufficient to meet the current obligations on the bonds. To make such levy was a continuing obligation of the districts under the contract under the general law, and was the decree of the court in the proceeding in which the districts were parties, and for the enforcement of which, by its very terms, the court retained jurisdiction.

Upon a hearing in the contempt proceedings in the Federal Court a finding was made that the levy of September 13, 1937 was intentionally inadequate. Good faith and legal obligation called for an adequate levy, assessment and collection.

Referring a moment to our adopted definition of a retroactive law, we think it may be said the order of January 10, 1938

was not an attempt to create new rights with their corresponding obligations, but was at least an attempted fulfillment of a legal and moral duty. If justice continues to be enforced these bonds must be paid according to their purport and tenor. Taxation is the only means by which they may be paid. Preventing a current default will be more just and equitable than making a greater levy to take up past defaults. If the burden be distributed as provided in the bonds its incidence will fall upon those justly entitled to bear same. Those desiring to live up to their obligations may safely do so and not pass them on for future owners of the property in the districts to bear.

If the order of January 10, 1938 provides only reasonably sufficient revenue to service the bonds and maintain the sinking fund, it is in exact accord with the legal duty of the districts. The record fails to show that this additional revenue was not necessary for this purpose. The Federal Court in the contempt proceedings, where the districts and the taxpayers therein were represented by their functionaries, found that the additional revenue was necessary. In this proceeding before the Federal Court no lack of jurisdiction was urged. In fact there was a submission thereto. Here the defendant does not urge that there was a lack of jurisdiction in the Federal Court to enforce its decree. The ultimate incidence of the original decree was upon those owning property subject to taxation in the districts.

If there was in fact a default in the amount of the levy made September 13, 1937, how was it legally to be remedied? Should they wait until the year had passed and see what the amount of the default amounted to and then take care of the same with current levies? In that event, persons and property might be encumbered with burdens that justly belonged to others. There is a personal liability, we take it, for these taxes.

If we say that the order of September 13, 1937 exhausted the power of the Commissioners' Court in the premises, then if such order failed to discharge the legal obligation, the Commissioners' Court was powerless to voluntarily remedy its own legal wrong.

In the case of Grimes County v. W. L. Slayton & Co., Tex.Civ.App., 262 S.W. 209, 214, it is said: "It is quite certain that the mere act of fixing a tax rate or per cent. to raise the annual interest and sinking fund required for bonds and refunding warrants is in its nature purely an administrative function, pertaining to the ordinary county business, and may be revised at a subsequent term of the court, unless individual rights are prejudicially affected and changed thereby. 11 Cyc. p. 402; 15 C.J. p. 470. To that effect is the holding in Basset v. City of El Paso, 88 Tex. 168, 30 S.W. 893."

The statement taken from this opinion finds strong support in the reasoning of the cases of Basset v. City of El Paso, 88 Tex. 168, 30 S.W. 893, and Mitchell County v. City National Bank, 91 Tex. 361, 43 S.W. 880, which are cited in the opinion. A writ of error was refused by the Supreme Court.

The taxes in question are not county taxes, as such. The County Commissioners are by the law of the creation of the districts the functionaries of such districts. The County did not enjoy the proceeds of the bonds, but same were used for the benefit of those owning property in the districts. Caprito v. Snelson, Tex.Civ.App., 91 S.W.2d 1106.

In our opinion, the contention of defendant that the order of January 10, 1938 violates Section 16 of Article 1 of the Constitution finds its strongest support in the case of Coffee v. Castleberry, Tex.Civ.App., 258 S.W. 889, in the Supreme Court, Castleberry v. Coffee, Tex.Com.App., 272 S.W. 767. The Court of Civil Appeals, in substance, held that a tax for a certain year attempted to be levied by a void ordinance could not be validated by ordinance passed in the subsequent year. There is to our minds this distinction between that case and this: in that case it was a levy for general purposes and amounted to the creation of an obligation; in this case, the exact obligation exists, and a levy is demanded by law to meet it; in that case a discretion was involved as to the extent of the obligation; in this case there is none.

We can see no particular applicability of the case of Broocks v. State, Tex.Civ.App., 41 S.W.2d 714. There it was stated, in substance, Commissioners' Court may levy taxes only at regular term with all members present. Article 2354, R.S., is the basis of the statement. As we understand it, January 10, 1938 was a regular term of the Commissioners' Court.

We have not discussed the decree of the Federal Court in the contempt proceedings as to being res adjudicata here. The decision of that question is not deemed necessary to the disposition of the case. There is justification in the evidence outside of the decree for the finding of default in the matter of the levy for servicing of these bonds. In our opinion the Commissioners' Court had the power, and it was its duty, to make good that default. When the transactions are viewed as a whole this is all the order of January 10th accomplishes, and all it was intended to accomplish thereby. It is not meant that either a State or Federal District Court may levy or assess a tax. This jurisdiction is not conferred by either the Constitution of the United States or that of Texas. The Federal decrees do not in any event attempt to levy or assess a tax. In event they did, there is no question but that it would be absolutely void.

Judgment affirmed.