## W. L. SLAYTON & CO. v. PANOLA COUNTY, TEX.

(District Court, E. D. Texas, Texarkana Division. March 3, 1922.)

Estoppel ⬤�ý62(3)—County held estopped to assert invalidity of warrants.

Where, though under a scheme to get money for improvement of roads when the tax limit for procurement of funds for such purpose had been reached, the county commissioners took steps and made orders sufficient and regular on their face, whereby refunding warrants for improvement of jail and courthouse were issued, the payee therein being merely their agent for selling such warrants, and they were sold to one having no notice or knowledge of the facts, and the funds so obtained were used for road purposes, and that, too, after procuring of the funds was generally known by the taxpayers, and after steps to enjoin the expenditure were stopped by agreement, whereby the money was distributed among the various precincts of the county for construction of roads, the county is estopped to assert invalidity of the warrants.

In Equity. Suit by W. L. Slayton & Co. against Panola County, Tex., with which was consolidated a suit by the county against said company and others. Judgment for plaintiff.

Johnson, Edwards & Hughes, of Tyler, Tex., for plaintiff.

S. W. Blount, of Nacogdoches, Tex., Beeman Strong, of Houston, Tex., and Marsh & McIlwaine, of Tyler, Tex., for defendant.

ESTES, District Judge. On May 8, 1916, at a regular term of the commissioners' court of Panola county, Tex., the following entry was made on the minutes of the court:

"It is ordered that the clerk issue scrip against the permanent improvement fund, in amount of $160,000 bearing interest at 6 per cent., as follows, to wit:

| Date. | To Whom. | Purpose. | Int. | Amt. |
|---|---|---|---|---|
| 3/1/'13. | Jones Bros. Co. | Courthouse. | 6%. | $80,000. |
| 4/3/'16. | Pauley Jail Co. | Jail Repr. | 6%. | 50,000. |
| 4/3/'16. | Greenburgh Const. Co. | Courthouse. | 6%. | 30,000." |

On the same date a resolution or order was entered, which provided in its caption for the issuance of warrants in the sum of $160,-000 "in payment of certain outstanding warrants of said county, held by J. L. Arlitt, of Austin, Texas." It contained recitals to the effect that the county at the time was indebted to Arlitt in the sum named, as evidenced by "warrants heretofore issued in payment of sundry claims, all of which warrants are now owned by the said J. L. Arlitt and are or will be in his possession"; that the county treasurer was without sufficient funds to pay them; that Arlitt had agreed to an extension of time and to accept in exchange new warrants; that the tax of 25 cents on the $100 valuation of property, designated a permanent improvement tax, as authorized by article 8 of section 9 of the Constitution, was at the time unappropriated—and then sets forth an order that new warrants be issued, of certain denominations, named in the order and maturing at stated periods, to take the place of said outstanding indebtedness. The form of the warrants, as well as of the interest coupons, and the form of assignment of same, was also

⬤�ý For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contained in the order, and provision was made for the levy of a permanent improvement tax of 25 cents on the $100 valuation, designed to create a fund for the payment of the warrants at maturity and the interest as it accrued. This tax, when collected, was to be placed in a special fund, known as the "Special Time Warrant Fund Class C."

On the same date, also, a third order was entered:

"That Panola refunding warrants in total amount of $160,000 be issued to J. L. Arlitt, Austin, Texas, to be dated May 15, 1916, bearing 6 per cent. interest, and that same be shipped to J. L. Arlitt, through the First National Bank, Carthage, Tex., % American National Bank, Austin, Tex., with draft attached, for $144,000."

Thereafter the warrants were duly issued and sent through the local bank to the Austin bank, where Arlitt resided, as provided in the last-named order. Accompanying the original draft were instructions to the Austin bank to permit the bonds to be detached and sent with another draft drawn by Arlitt on the plaintiff, from the return of which latter draft the original draft was to be paid. Through such procedure the warrants were immediately sold to W. L. Slayton, the plaintiff herein, for approximately $159,000 in cash, of which amount $144,000 was received by the county. The remainder was distributed between Arlitt and others as fees or commissions for negotiating and consummating the sale. The funds thus procured by the county were used at a subsequent date for the construction and repair of the county roads, and no portion of same was applied to purposes for which the permanent improvement fund of the county could lawfully have been employed.

At the time the order of the commissioners' court directing the issue of these warrants was entered there were no outstanding obligations against the improvement fund, and the scrip directed to be issued to the jail company and others, and which was the basis of the proposed new obligations, was without consideration and of no value. The transaction from its beginning was, in fact, a device on the part of the commissioners to procure funds for the improvement of roads at a time when the tax limit permitted by law for the procurement of funds for such purposes had been reached. But the plaintiff knew nothing of such conditions, and in good faith, and upon the orders before referred to and certificates made by the county officials purporting to reflect the records, bought the warrants, and, as stated above, of the sum paid by him—$159,000—at least $144,000 reached the hands of the treasurer of the county, and was expended for the improvement of the county roads.

In July following the date of these proceedings a suit was filed by interested taxpayers in the district court of Panola county, designed to prevent, by injunction, the members of the commissioners' court from diverting to the road and bridge fund of the county the funds obtained from the issuance of these warrants, and the employment of same for the purpose of road building and improvement. A temporary injunction was issued, and on August 1st following an agreement was made between the parties, by the terms of which the suit was to be withdrawn and dismissed, upon condition that the commis-

sioners' court enter upon their minutes an order distributing the sum realized from these warrants, to wit, $144,000, among the various commissioners' precincts of the county, in proportions described in the agreement. On August 3 the said suit was, in accordance with said agreement, dismissed.

At a later time—December 14, 1917—after the money had been expended as provided in the judgment just mentioned, the personnel of the court having in the meantime changed, a resolution was passed by the commissioners' court, repudiating on behalf of the county the warrants that had been issued, and giving authority to employ counsel to begin the necessary proceedings to determine the validity of the warrants, or to defend the county in suits that might be brought against it in connection therewith. On December 21, 1917, suit was accordingly brought in the district court of Panola county, by the county, against J. L. Arlitt, the Pauley Jail Company, and other payees in the scrip before mentioned, the tax assessor, and the tax collector of the county, and W. L. Slayton & Co., petitioning for a review of the before-mentioned orders and for judgment that the warrants referred to in the order of May 8, 1916, be declared void and the tax collector be enjoined from collecting the tax authorized in same. That suit was subsequently, by proper process, removed to this court, and on January 9, 1918, a suit was brought by Slayton & Co. in this court, also against the county, for the recovery of interest that had matured on the said warrants, and a judgment that the same constituted valid obligations against the county.

The two suits involved practically the same question, and have been consolidated. In the petition of the plaintiff in the first suit, and in the answer of the defendant in the second suit, the various orders and proceedings of the commissioners' court are set forth, and the point is made that the warrants do not represent binding obligations upon the county; that they are void because, first, they were issued as a sequel to a conspiracy or design to procure money in an illegal fashion for expenditure on the public roads, and, second, because under the Constitution the commissioners' court had no authority to issue public building warrants for the construction of roads and bridges, and that the provision made for the payment of same, under all the circumstances, was without consideration or effect. In reply to this, the plaintiff alleges that, if such are the facts, he had no knowledge of them, that in good faith, and after orders within the proper jurisdiction of the commissioners had been entered, the warrants were purchased by him, and that under all the circumstances the defendant is estopped from denying the validity of them.

There is no controversy or conflict in the testimony respecting what really transpired. The allegations of both the county and the plaintiff are supported by the proof. There was no outstanding indebtedness to authorize the issuance of the scrip to the three parties in whose favor it was issued; there was no claim on the part of either of said concerns presented against the county; there was no intention on the part of the commissioners for such scrip when issued to be delivered. The idea was to get a sort of basis for the levy of a

permanent improvement tax that would support an issue of warrants, the proceeds of which, from the beginning, were intended to be used on the roads. The tax limit permitted by law for road improvement purposes had, previous to that time, been reached, and the people had refused to vote an issue of bonds for the construction of roads.

On the other hand, the good faith of the plaintiff is not challenged in any fashion. He acted solely upon the exhibits from the record, paid almost par value for the warrants, and was, in fact, misled by the recitals in the various orders and the representations made to him respecting same. He caused the validity of the bonds to be submitted to an attorney, and dealt with the county officials with the utmost sincerity. The latter received the proceeds of the warrants and expended same for the improvement of roads that reached every precinct of the county. The case therefore presents the anomalous situation of funds having been procured by the commissioners of a county as a result of an unlawful conspiracy, but by the employment of forms and methods that are provided by law for use in appropriate circumstances; such funds having been procured from a person acting with the commissioners in perfect good faith, and after being thus procured were used by the county authorities for purposes that have to do with the public interest and welfare.

While the warrants named J. L. Arlitt as the payee, he was in fact but a means to an end. The evidence, of course, must be considered in its entirety, and when so considered shows that the transaction did not contemplate that Arlitt would purchase the warrants at all. He was the agency through whom, according to the original plans, they were to be delivered to the prospective purchaser. It was anticipated in the beginning that the plaintiff's and not Arlitt's, funds would be obtained. The plaintiff (or whoever bought the warrants) was the party with whom ultimately the commissioners meant to deal, and they were dealing with him through Arlitt as their agent. From the funds procured from him the county was to, and in fact did, receive the proceeds that the commissioners set out to get. This is an important fact, for it distinguishes this case from Watson v. Huron, 97 Fed. 450, 38 C. C. A. 264.

The warrants themselves were not negotiable, as that term is used in the law merchant (Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373), and it follows, therefore, that as regards their commercial status any defense that the county may have can be asserted against the plaintiff herein. The commissioners' court could not lawfully levy a tax for a county improvement when no improvement was in contemplation; but, on the other hand, the intention was to divert the funds obtained by such tax to other purposes. Ault v. Hill County, 102 Tex. 335, 116 S W. 359. And the power to issue refunding warrants can lawfully be exercised only to the extent that the original debt was valid. City of Laredo v. Looney, 108 Tex. 119, 185 S. W. 556. The commissioners' court had the authority to make improvements on the courthouse and jail, and to issue warrants for that purpose, provided, at the time the debt from which such warrants resulted was created, provision with-

in the limits provided by the law was made for the payment of same. Cresswell v. County (Tex. Civ. App.) 27 S. W. 737; Lopez v. Lasater (Tex. Civ. App.) 202 S. W. 1039. The commissioners, too, having in charge the settlement and payment of debts, had the authority to refund warrants that had been previously issued for courthouse and jail purposes, and, in order to distribute the indebtedness, to direct the issuance of new warrants on the conditions mentioned in the Constitution. Vernon's Statutes, art. 2241; City v. Jester, 97 Tex. 360, 78 S. W. 1058.

These propositions are not controverted, and they make, therefore, the determining question here: Whether, in a state of affairs such as outlined above, a county can be permitted to urge the facts; that is, whether the county is estopped from claiming that the orders on which these warrants are based are void, and then repudiate the obligations resulting from them.

There was nothing on the record to put the plaintiff upon actual notice of this device on the part of the commissioners. The issuance of the scrip, in the absence of bad faith, was an adjudication of the claim as a debt against the county. Jeff Davis County v. Davis (Tex. Civ. App.) 192 S. W. 291. In the form of the warrants provided for by the court's order was a recital that—

"the claims of said J. L. Arlitt evidenced by said warrants have been investigated and found to be just; that said claims have been duly audited and allowed by the commissioners' court of said county; that said county has no set-off or counterclaim against same."

The record contained a copy of a certificate, signed by the county judge and attested by the county clerk and the seal of the commissioners' court, to the effect that the three warrants involved herein "have been canceled, and new funding warrants issued in lieu thereof"; also a certificate, signed by the county treasurer and the county judge, attested by the clerk, reciting that the funding warrants were "for the purpose of funding a like amount of the legal subsisting and binding indebtedness of the county, and that the said indebtedness of $160,-000 * * * have been surrendered up to the county for cancellation." There was still another certificate, signed by the county judge, the county clerk, and the county treasurer, to the effect that—

"no litigation of any nature is now pending or threatened, restraining or enjoining the issuance of said warrants or the levy and collection of taxes to pay the interest and principal, or in any manner questioning the proceedings and authority by which same is made, or affecting the validity of the warrants thereunder, * * * and that Panola county had no set-off or counterclaim against J. L. Arlitt, or against said warrants."

These certificates, while of no special probative effect, illustrate the circumstances in which the plaintiff was induced to venture into this transaction and the zeal and resources employed by the officials of the county to interest him. So we have here a record that, tested by its recitals alone, shows the issuance of valid scrip and the funding of same, with provision made for the payment of the debt thereby created, with nothing to impart even constructive knowledge to the plaintiff of the bad faith of the commissioners, unless it be that what-

ever knowledge Arlitt had was chargeable to him. For the reasons heretofore stated, it is not believed that he should be so charged.

Despite the methods employed in the issuance of these warrants, if the proceeds had been in fact used to make improvements on the courthouse and jail, probably no complaint could be made. Ault v. Hill County, supra. The fact that the ruse of outstanding warrants was resorted to would not, in such event, as regards the plaintiff's rights, change the character of the real transaction. However that may be, the important fact remains that the commissioners' court had the authority, in the exercise of the discretion of its members, to determine to make such improvements and to issue valid warrants for such purposes, or to fund an indebtedness previously created for such purposes: Provided, as was done in this case, arrangements were made within the terms of the law for the liquidation of the indebtedness thus created. Vernon's Statutes, art. 2241; Lasater v. Lopez, supra.

In using the power thus delegated to them, the commissioners were transacting the routine business, or exercising what some of the courts term the "proprietary powers" of the county. Such procedure is different from the exercise of governmental functions, or the disposition of those larger questions that are determined by the public consent or intervention. The authorities are practically unanimous that, as regards such routine or business engagements, the doctrine of estoppel applies to municipal corporations just as to individuals. Trust Co. v. Arkansas City, 76 Fed. 271, 22 C. C. A. 171, 34 L. R. A. 518; Kneeland v. Gilman, 24 Wis. 39; Macon County v. Shores, 97 U. S. 279, 24 L. Ed. 889. The doctrine itself, as applied in this case, would have no relation to the validity or invalidity of the act of the commissioners. It has to do with whether such act should prevent the county from asserting the invalidity. It is called estoppel, "because a man's owne act or acceptance stoppeth or closeth his mouth to alleage or plead the truth."

In this respect—that is, as regards the application of the principle of estoppel—the facts in the cases relied on by the defendant differ, in a fundamental regard, from the facts herein. In Bridge Co. v. San Antonio (C. C.) 62 Fed. 882, no question of estoppel was involved. A bridge was built by an arrangement that was palpably void under the Constitution. But the plaintiff was not misled by anything that transpired. The records themselves showed that no provision had been made for the payment of the debt that was created, and no representation to the contrary was made. The party to whom the warrants in Watson v. Huron, supra, were first delivered, had actual knowledge, when he bought them, of their invalidity. In the nature of things, the instruments being nonnegotiable, his grantee could not plead estoppel. In Litchfield v. Ballou, 114 U. S. 190, 5 Sup. Ct. 820. 29 L. Ed. 132, the court took occasion to specifically mention that "there was no evidence of any false or fraudulent representations by any of the authorized agents of the county."

It is true, as contended by the defendants, that municipalities are not estopped by recitals in the judgments or orders that have been

entered. But the proposition has reference, as illustrated by the cases cited in support of that view, to transactions and engagements that are patently beyond the powers or authority of the court, and not to a state of facts such as we are considering. The Case of Litchfield, supra, illustrates the thought. Bonds that created on their face an indebtedness in excess of the constitutional limit were held to be void, and funds procured from the sale of them were not recoverable against the municipality, despite recitals to the contrary. The invalidity of the transaction was patent, and no representation could be made that could fairly be said to have misled the purchaser.

The situation is different where a court is transacting business or entering into engagements that come within the scope of its constitutional powers, and, when purporting to be so employed, procures for the municipality funds that could lawfully be used in meeting such engagements. To the latter class this case belongs. As far as the record reflected the procedure to the plaintiff, the commissioners were funding a valid debt incurred in connection with the construction and repair of the courthouse and jail. They had been delegated by the people of the county to negotiate such transactions. There was nothing to indicate that the powers vested in them by law had been exceeded, or that they were using the positions to which they had been called for some ulterior, though public, purpose. Under such circumstances, they procured from a man dealing with them in good faith a large sum of money, which was used in work over which they had control. To now invalidate the obligations thus assumed on account of the undisclosed motives of the officials would be to work a great injustice and use the Constitution and the courts to perpetrate a wrong.

There are some phases of the testimony that disclose facts which from one viewpoint are immaterial, yet they are quite out of the ordinary, and make the application of the principle of estoppel especially appropriate. This thing was not done in a corner. When the order was originally entered, there is evidence tending to show that at least one of the commissioners did not participate in the deliberations of the court or approve of the proceedings, and that fact is pleaded by the plaintiff in the suit brought in the state court as a reason for invalidating the orders. Before the money was expended, this commissioner had been acquainted with the facts, and had perhaps repudiated the transaction. The money was in the hands of the treasurer, at least as late as August, and during that time any citizen of the county had the right to prevent, by legal proceedings, its expenditure on the roads. If such had been done, the plaintiff could at that time, under every rule of reason and justice, have recovered the funds he had invested in the warrants. Not only so, but one citizen did in fact institute a suit for that purpose—a suit that was for the benefit of himself and all other citizens who might want to join in the proceeding. He procured an injunction with that effect, and in that suit, in which the county attorney was of counsel, and the commissioner who objected to the first arrangement was a party, a judgment was entered by agreement, under the terms of which this plaintiff's money

was distributed among the various precincts of the county for the construction of roads.

The evidence shows that the affair at the time had gained notoriety, and aside from that it is inconceivable that such an amount of money could be expended on so comprehensive a road-building project without practically every taxpayer in the county having some knowledge of it. Thus all of the people of the county accepted the benefits of this transaction, and to that extent approved of it. So it would seem that the facts bring the case within the application of the principle of estoppel, and that the county cannot be heard, through its present officials, and under all the circumstances, to deny the verity of records made by their predecessors, when to do so would work an injury to one dealing in good faith with them.

This does not disregard in the slightest those constitutional provisions to which counsel for the defendant have referred with much earnestness and ability, and which it is the duty of commissioners and of courts alike to respect and enforce. Those provisions are recognized when the invalidity of the warrants is conceded. To the facts, and to the results which the law attaches to such facts, is and should be applied the doctrine of virtue and honesty, which forbids the county from investing its officers with authority to act for it in business relations, and then, while enjoying the benefits of their wrongdoing, repudiate its obligations to one who has been misled by them.

If such a construction of the law has the effect, as counsel ably contend it will have, to jeopardize the safeguards which the Constitution has erected for the protection of the people against excessive taxation, relief is with the legislative branch of the government. The right of commissioners' courts to issue warrants has long been recognized. The decisions sustaining such power were rendered many years ago. If commissioners should not be vested with such discretion, or if their power to incur debts evidenced by warrants, and to create situations just such as exist in this case, should be curtailed, the authority of the Legislature is ample to so decide. But until that is done the courts must apply to transactions done within the authority thus recognized the rules and principles of law that protect alike the rights of counties and of parties with whom counties deal.

It is therefore the order of the court that the plaintiff recover from the defendant a judgment for the amount of the interest shown by the testimony to have been due at the time of the institution of the suit.