## CITY OF GAINESVILLE v. BROWN-CRUMMER INV. CO. et al.

Circuit Court of Appeals, Fifth Circuit.
July 6, 1927.

No. 4861.

1. Removal of causes ⬥111—Federal court held without jurisdiction of parties defendant, added after removal of city's suit against purchaser of street improvement warrants.

Where purchaser of city warrants given in payment for street improvement, on being made party to action against contractor and others to recover difference between warrants, issued and work done, removed cause as to it to federal court, and where city, after denial of motion to remand, recast pleadings and again made contractor and others defendants, *held*, court had no jurisdiction of defendants other than purchaser of bonds.

2. Municipal corporations ⬥897—City warrants for street improvements held not invalid, because payable in future years.

That city warrants given in payment for street improvements were payable in future years *held* not to render them invalid.

3. Municipal corporations ⬥902—Recitals in city warrants, made to induce purchase, are binding on city, in absence of fraud or knowledge of invalidity on part of purchaser.

Recitals in city warrants or other evidences of debt issued in payment of obligations of city, made for purpose of inducing purchase of instruments, are binding on municipality, in absence of fraud or knowledge on part of purchaser of facts showing invalidity.

**4. Municipal corporations ☞902—Recitals in warrants for street improvements held to estop city from asserting irregularities or partial failure of consideration as against purchasers (Gainesville City Charter; Rev. St. Tex. 1925, arts. 701, 709, 710).**

Recitals in warrants given by city of Gainesville for street improvements under authority of city charter and Rev. St. Tex. 1925, arts. 701, 709, 710, *held* to estop city from urging irregularities or partial failure of consideration as against purchasers of warrants.

**5. Municipal corporations ☞902—That city street improvement warrants were sold at discount held immaterial as affecting validity.**

That warrants given in payment for street improvements were sold at a discount *held* immaterial as affecting validity thereof.

In Error to the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Action by the City of Gainesville against the Brown-Crummer Investment Company and others. To review a judgment in favor of the first-named defendant, plaintiff brings error. Affirmed in part, and reversed in part.

W. O. Davis, of Gainesville, Tex. (Cecil Murphy, of Gainesville, Tex., on the brief), for plaintiff in error.

Alex F. Weisberg, of Dallas, Tex. (Elcock & Martin, of Wichita, Kan., and Thompson, Knight, Baker & Harris, of Dallas, Tex., on the brief), for defendant in error Brown-Crummer Inv. Co.

F. C. Dillard, of Sherman, Tex. (Head, Dillard, Smith, Maxey & Head, of Sherman, Tex., on the brief), for defendant in error Head.

John T. Suggs, of Denison, Tex., for defendant in error Southern Surety Co.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. The pleadings in this case are too voluminous to be briefly stated. The record is not as clear as it might be, but the case shown without serious dispute may be summarized as follows:

In November, 1919, the city of Gainesville, Tex., hereafter referred to as the city, entered into a contract with the Southern Construction Company, hereafter called the contractor, a partnership composed of Harry D. Levy and Lester Levy, for certain paving and other street improvements. The contract contemplated the city's paying for a portion of the general paving and entirely for the intersections; the city's share being estimated at $50,000. After some preliminary and supplemental agreements this final result was arrived at: The contractor agreed to accept warrants, at 5 per cent. discount, in amounts of $1,000, maturing March 1, 1921, to March 1, 1940, with interest at 6 per cent., payable semiannually and evidenced by coupons attached.

The Brown-Crummer Investment Company, hereafter called the buyer, agreed to purchase these warrants when issued, and further agreed to print them and to furnish legal advice to the city and supervision of the necessary ordinances, for a further discount of 5 per cent. The warrants up to $47,000 were printed and delivered to H. W. Head, who was in some way interested in the contract, in escrow, and he agreed to indemnify the city on the contract up to $50,000, and furnished the Southern Surety Company, hereafter called the surety company, as guarantor for his undertaking.

From time to time, as the work progressed, the city council adopted ordinances purporting to approve estimates of the engineers covering the work completed, retaining 10 per cent., and authorizing the issuance of warrants to cover same. Head drew drafts on the buyer with the warrants and certified copies of the ordinances attached, and these drafts were paid. Six of the warrants have been paid by the city, and the city also from time to time remitted the additional 5 per cent. discount to the buyer. The warrants were in form as follows:

"Number ————.        $1,000.00.

"United States of America, State of Texas, County of Cooke.

"City of Gainesville Street Improvement Warrant.    Series A 1.

"This is to certify that the city of Gainesville, county of Cooke, and state of Texas, for value received, is justly indebted and promises to pay to the Southern Construction Company, contractor, their assigns, or bearer, on the first day of March, 1921, at the offices of the Brown-Crummer Investment Company, Wichita, Kansas, one thousand dollars, in lawful money of the United States of America, with interest thereon from date hereof until paid at the rate of six per cent. (6%) per annum, payable on the first day of March, 192—, and semiannually thereafter, on September 1st and March 1st of each year, and the city treasurer is authorized, ordered, and directed to pay to the said Southern Construction Company, their assigns, or bearer, said principal sum, together with interest thereon, evidenced by coupons attached hereto, principal and interest pay-

able at the place above named, upon presentation and surrender of warrant or proper coupon.

"This warrant is one of a series of fifty (50) warrants, numbered consecutively from one (1) to fifty (50), inclusive, in the denomination of one thousand dollars ($1,000.00) each, aggregating the sum of fifty thousand dollars ($50,000.00), issued for the purpose of evidencing the indebtedness of the city of Gainesville, Texas, to the Southern Construction Company, their assigns, or bearer, for the construction of certain street improvements in accordance with the terms and stipulations of contract of date November 20, 1919, and the proposal and plans attached thereto and made part thereof, under and by virtue of the Constitution and laws of the state of Texas, and pursuant to an ordinance passed by the city council of said city of Gainesville, Texas, on the 16th day of December, 1919, recorded in Book 6, at page 583 et seq., of the minutes of said city council.

"The date of this warrant, in conformity with the ordinance above mentioned, is November 20, 1919. And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issuance of this warrant have been properly done, happened, and performed in regular and due time, form, and manner as required by law, and that the total indebtedness of said city, including this warrant, does not exceed any constitutional or statutory limitation.

"In witness whereof, the city of Gainesville has caused this corporate seal of said city to be hereto affixed, and this warrant to be signed by its mayor and countersigned by its city secretary, and registered by the city treasurer, as of the date last above written. E. H. Blackburn, Mayor, City of Gainesville, Texas. Countersigned: S. A. Bryan, City Secretary, City of Gainesville, Texas.

"Registered this the 27th day of April, 1920. R. R. Hulett, City Treasurer, City of Gainesville."

Before the paving was completed, the work on two streets was stopped by an injunction secured by a taxpayer. Thereafter the contractor offered to do paving on other streets, but nothing came of this offer. The warrants, however, had all been issued, and had been paid for by the buyer. In October, 1921, suit was brought by the city in the district court of Cook county, Texas, against the contractor, H. W. Head, and the surety company, to recover the difference between the warrants issued and the work done, alleged

to be about $15,000. The city at that time apparently had no thought of contesting the validity of the warrants and did not include the buyer in the suit. A default judgment was rendered in favor of the city against the contractor for $4,090, and against the other two defendants for $15,000. On appeal this was affirmed as to the contractor and reversed as to Head and the surety company by the Court of Civil Appeals for the Sixth Supreme Judicial District. 254 S. W. 323. The reversal was on the ground that the petition showed no cause of action against Head and the surety company. The validity of the warrants was not considered.

On the remanding of the case to the district court, the city filed an amended petition, making the buyer a party defendant. The buyer removed the case against itself to the United States District Court for the Eastern District of Texas as a separable controversy, and a motion to remand was denied. Thereafter the city recast its pleadings and again made the surety company party defendant, and, as H. W. Head had died in the meantime, H. O. Head, his executor, was brought in. The contractor was omitted from the suit. In the petition in the federal court the city prayed for a judgment against the buyer, declaring the warrants void, and for an injunction restraining their sale or other disposal, and prayed for judgment against the other defendants in the sum of $15,264.71.

The buyer set up a counterclaim in the answer, and prayed for judgment against the city on the warrants and coupons then due and unpaid. Notwithstanding the prayer for equitable relief, the case was tried to a jury, and at the conclusion of the evidence the court directed a verdict in favor of the buyer in the amount of $13,125, and rejected the claim of the city against H. O. Head, executor, and the surety company. There are numerous errors assigned, but those running to the direction of the verdict are the only ones that need be considered.

[1] The case presents an anomaly in pleading and practice, but, applying the remedial provisions of section 269, Judicial Code, as amended (40 Stat. 1181 [Comp. St. § 1246]), we may consider it on this writ of error. The court was without jurisdiction as between the city and Head, executor, and the surety company, as the case had not been removed as to them, and there could be no jurisdiction as between the city and Head, both being citizens of Texas, in any event. But that could not affect the jurisdiction as to the buyer,

and in view of the result we may dismiss those two defendants from further consideration.

The city contends that the instruments in suit are in fact bonds, and not warrants, and are void because not issued in conformity with the city charter and the laws of Texas, and also relies upon certain irregularities in the awarding of the contract and the issuing of the warrants.

The charter of the city of Gainesville was granted by a special act of the Texas Legislature, approved March 17, 1909, which act contains the recital that it shall be considered a public law of Texas, and thereafter, within the same year, was adopted by a vote of the people. Under its general powers the city has full authority to contract, to grade, pave, and otherwise improve its streets, and to levy annually for general purposes and for paying its bonded indebtedness ad valorem taxes on all real, personal, and mixed property within the territorial limits of the city. The charter contains these specific provisions:

"The specification of particular powers shall never be construed as a limitation upon the general powers herein granted; it being intended by this act to grant and bestow upon the inhabitants of the city of Gainesville full power of self-government, and it shall have and exercise all powers of municipal government not prohibited to it by this charter or by some general law of the state of Texas, or by the provisions of the Constitution of the state of Texas."

"The provisions of this act shall be liberally construed with a view to carry out the purposes of this charter and in case of doubtful construction, it shall be resolved in favor of the city."

Section 1 of article 4 of the charter provides that the city shall have the authority by ordinances duly passed to borrow money for permanent improvements, including paving and repaving of the streets, and may issue bonds for that purpose in amounts not exceeding $150,000 in any one year, subject to approval by the taxpayers at an election held for that purpose if the amount exceeds $2,500; requires that provision be made at the same time to assess and collect annually a sufficient sum to pay the interest on the bonds and to create a sinking fund of at least 2 per cent.; that the bonds shall not pay more than 5 per cent. interest, and shall be invalid if sold for less than par and accrued interest.

The laws of Texas provide for submission to the taxpayers of a proposition for the issuance of bonds by a city, that bonds can have no validity unless approved by the Attorney General, and that said bonds must be registered by the comptroller. R. S. arts. 701, 709, 710. If the instruments in suit were to be classed as bonds, there could be no doubt of their invalidity, but they are not to be so considered. It was not contemplated that the warrants should be issued for the purpose of borrowing money.

[2] It was the intention of all parties that they should be issued in payment for work actually done in paving and otherwise improving the streets under the general powers of the city, and the fact that they were payable in future years would not render them invalid. It is not shown that the city would not have sufficient funds for general purposes for the years in which the warrants fall due, nor that the taxes assessed would exceed the legal limit imposed upon the city. The distinction between bonds and warrants issued by Texas municipal corporations has been repeatedly recognized by the courts of that state. The provisions of the charter and the Texas law as to bonds do not affect the authority of the city to issue warrants to be paid out of current revenue in the future. Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373; City of Tyler v. Jester & Co., 97 Tex. 344, 78 S. W. 1058; Bridgers v. City of Lampasas (Tex. Civ. App.) 249 S. W. 1085.

As affecting the validity of the obligations as warrants, the city contends that the paving contract and all the proceedings relating thereto are void, because estimates of the cost, and plans and specifications for the proposed work, were not approved by the council before advertising for bids; that the contract as let was different from the bid and less burdensome, and that the contract provided that preference be given to citizens of Texas and Gainesville; and that in some instances estimates of the work completed were not in fact made before the ordinances approving them were adopted. Perhaps these irregularities might have been urged by a taxpayer or an unsuccessful bidder in a suit to enjoin the letting of the contract, or to prevent the prosecution of the work, on showing fraud or damage to the city; but after the contract was let and the work completed it is doubtful that the city could urge them against the contractor.

The city also contends that there was a failure of consideration. It seems to be agreed between the parties that the amount of work not done under the contract amounted to about $15,000. It is difficult to recon-

cile this with the fact that, when the contractor was sued in the state court, the recovery was only about $4,000; but, assuming that the deficiency in work done was approximately $15,000, still the city had ample security for that amount.

[3] It is unnecessary, however, to consider the objections to the warrants above made. The city had the capacity to issue and sell the warrants. Recitals in warrants or other evidences of debt issued in payment of the obligations of a city are made for the purpose of inducing the purchase of the instruments, and are binding upon the municipality, in the absence of fraud or knowledge on the part of the purchaser of facts that show the invalidity of the warrants.

It is true that a Mr. Blaine represented the buyer initially in negotiating the purchase of the warrants and attended some of the meetings of the council, and that Mr. Wm. M. Harris, a well-known and reputable attorney of Dallas, also represented the buyer in preparing the ordinances for the adoption of the council and supervised to some extent the subsequent proceedings; but it is not shown that either of these men had any knowledge of any irregularities in the letting of the contract or in the doing of the work, or the adoption by the council of estimates, and it is shown without contradiction by the testimony of Mr. Crummer, who represented the buyer in the final purchase of the warrants, that he had no knowledge of any of the irregularities now urged, and relied entirely on the recitals in the warrants in buying them.

[4, 5] In this case the city is clearly estopped to urge the irregularities above mentioned and the partial failure of consideration, and it is immaterial that the warrants were sold at a discount. City of South Houston v. Carman (C. C. A.) 6 F.(2d) 358; Slayton & Co. v. Panola County (D. C.) 283 F. 330; Scott County v. Advance-Rumley Thresher Co. (C. C. A.) 288 F. 739, 36 A. L. R. 937; Grimes County v. W. L. Slayton & Co. (Tex. Civ. App.) 262 S. W. 209; Evansville v. Dennett, 161 U. S. 434, 16 S. Ct. 613, 40 L. Ed. 760; City of Belton v. Brown-Crummer Investment Co. (C. C. A.) 17 F.(2d) 70.

From the above the conclusion reached is that reversible error is not shown in the direction of the verdict in favor of Brown-Crummer Investment Company, and to that extent the judgment is affirmed. The case is remanded, with instructions to dismiss the proceedings as between the city and Head, executor, and the surety company, and for such other proceedings as may be necessary, not inconsistent with this opinion.

Affirmed in part; reversed in part.