## CITY OF DUBLIN v. H. B. THORNTON & CO. et al.

### No. 1084.

Court of Civil Appeals of Texas. Eastland.

May 5, 1933.

Oxford & McMillan, of Stephenville, for appellant.

P. C. Maynard, of Bastrop, and Turner, Seaberry & Springer, of Eastland, for appellees.

FUNDERBURK, Justice.

The city or town of Dublin, a municipal corporation, chartered under the general laws, brought this suit against H. B. Thornton & Co., a firm composed of H. B. Thornton and A. O. Harper, and against the First National Bank of Smithville, to cancel a certain contract, and three warrants issued thereunder; said warrants having been subsequently transferred to the First National Bank of Smithville. On October 24, 1929, said city or town of Dublin, acting by and through its city council, entered into a written contract with said H. B. Thornton & Co., by the terms of which the latter undertook to compile all necessary information concerning property in said town assessed, unrendered or unknown, upon which delinquent taxes were due up to and including the year 1929, and to compile statement showing the amount of taxes, penalties, and interest due upon each such lot or tract of land, and to notify all interested parties as required by law, and wherever necessary to enforce the collection of any such tax, to prepare and file all tax petitions, and to aid the city attorney in prosecuting tax suits to final judgment and sale. By the contract H. B. Thornton & Co. were further obligated to compile and install a complete plat book system showing each tract, lot, block, or parcel of land in said town, with the description of same, so numbered as to show the contents of same, together with the record owner; to build a wall map of said town showing every tract, lot, block, or parcel of land, with lot and block number printed on the same, as well as the name of the record owner, and also showing streets, railroads, and other boundaries, as well as churches, parks, cemeteries, etc. The contract required said H. B. Thornton & Co. to employ all skilled help in said work and to furnish all necessary labor and stationery at their own expense, the final record to be turned over to the town of Dublin, and to become the permanent assessor's abstract record of said town.

In consideration of said services, the town of Dublin obligated itself to pay H. B. Thornton & Co. 25 per cent. of all delinquent taxes, penalty, and interest due said town of Dublin after $1,500 and court costs had been paid. Another provision of the contract was as follows: "As a consideration for making and installing said tax system in the town of Dublin the said town agrees and binds itself to pay to H. B. Thornton & Company $1,500.-00, said payment to be made in warrants which shall be non-interest bearing, and state upon their face that they are payable only out of delinquent taxes, penalty and interest, when collected, and there is hereby set aside and appropriated $1,500.00 of the first collection of the said delinquent taxes, penalty and interest, after court costs have been paid, to pay same." The contract provided for the execution of a bond by H. B. Thornton & Co. in the sum of $5,000 to secure the faithful performance of the contract. Another provision of the contract was that the work called for should be begun within five days and prosecuted with all expediency. Still another provision of the contract was: "Upon approval of the bond called for by (?) the city council shall issue to H. B. Thornton & Company the $1,500.00 in warrants for the tax system *to aid in the cost of supplies and labor.*" (Italics ours.)

The contract was modified in an unimportant particular by a subsequent agreement, but of the same date. A few days after the date it bears, the contract was finally executed, and the three warrants mentioned in the contract as compensation for preparing the plat book system, and bearing the date of the contract, were issued and delivered to said H. B. Thornton & Co. Each of said warrants referred to the order of the city council, which constituted the contract above described, and among other things recited: "This warrant is payable only out of a special fund called the 'Delinquent Tax Fund,' which fund has been created by setting aside 25% of all delinquent taxes, penalty and interest collected for said town, and the first $1500.00 of delinquent taxes, penalty and interest, and the City Treasurer of the Town of Dublin is hereby authorized, ordered and directed to pay this warrant as and when there is sufficient money in the delinquent tax fund to pay same."

There also appeared in each of said warrants the following: "And it is hereby certified and recited that all acts, conditions and things required to be done precedent to and

in the issuance of this warrant has been properly done and happened, and been performed in regular and due time, form and manner, as provided by law, and that the total indebtedness of said town, including this warrant, does not exceed any constitutional or statutory limitation."

Each of said warrants was endorsed on the back as follows: "*Assignment.* For value received we hereby sell and transfer the within warrant, together with all our interest in and all our rights under the said warrant, without recourse. [Signed] H. B. Thornton & Company, H. B. Thornton."

The evidence shows without dispute that about the 7th of November, 1929, and within two or three days after the warrants were delivered, the First National Bank of Smithville for a valuable consideration, purchased said warrants. This purchase was made after it had wired the Dublin National Bank as follows: "Advise us by wire without responsibility on your part the financial condition, general standing, ability and integrity of the management of the City of Dublin tax warrants maturing October 24th, 1930"—and had been advised in reply thereto that "City of Dublin tax warrants regarded good," and after having submitted to it a certificate signed by the mayor, secretary, and treasurer of the town of Dublin, of date the 5th day of November, 1929, to the effect that they had officially signed said delinquent tax warrants, and that "there is no litigation either pending or threatened, restraining or enjoining the issuance of said warrants, and none of the proceedings authorizing their issuance have been repealed. We further certify that there is no litigation pending or threatened affecting the creation of said town of Dublin or the boundaries thereof."

Plaintiff sought the cancellation of said contract and said warrants on the ground that H. B. Thornton & Co. had wholly failed to perform any of their obligations under the contract, but that, on the contrary, they had immediately abandoned the said contract, and that they had fraudulently promised to do the things called for in said contract, without intention of performing the same, as an inducement to the said town of Dublin to issue and deliver said three warrants.

The undisputed evidence shows that the contract was finally consummated and the warrants delivered at night, and that the same night Thornton, who was representing H. B. Thornton & Co., took the warrants and left town, and had never returned or done anything which the contract obligated them to do.

The First National Bank of Smithville, acting by a receiver, in its answer resisted the cancellation of the warrants as against said bank on the ground of estoppel, based upon the recitals in the warrants and also by reason of the said certificate of the city officials.

Thornton and Harper failed to answer or appear, and the trial court gave judgment against them canceling the contract, save only as necessary to protect the rights of the First National Bank of Smithville, and as to the latter sustained its plea of estoppel, and refused to cancel said warrants and that part of the contract necessary to support said warrants.

From the judgment in favor of the bank, the plaintiff has appealed.

■ The warrants in suit are nonnegotiable instruments. They are of the same nature and differ from negotiable bonds as the instruments considered in Lasater v. Lopez, 110 Tex. 179, 217 S. W. 373, 376. As said in that case: "Such instruments are not intended to have the qualities of commercial paper and do not possess them." As regards the importance of the distinction from the standpoint of public policy, the court further said: "It would be disastrous to counties and municipalities to accord to instruments of such nature that attribute of negotiable bills which protects an innocent holder for value from defenses of which he has no notice."

■ The most important question presented by this appeal is whether or not the recitals contained in nonnegotiable warrants will estop the city from urging fraud of the original payees and/or failure of consideration to establish its nonliability to pay same as against a bona fide purchaser for value without notice thereof. For the purposes of this discussion we shall assume that, if the warrants were negotiable bonds, the estoppel would apply. If it applies to these warrants the same as to bonds, then we think it cannot be gainsaid that these recitals, consisting as they do of generalized phrases, have the effect to abolish for all practical purposes any distinction between negotiable bonds and nonnegotiable warrants. To give the recitals such effect would be to deny in principle the only ground upon which the warrants involved in Lasater v. Lopez, supra, were sustained as against the attack upon their validity; namely, that they were not authorized by an election as bonds were required to be. The question, it must be admitted, is not so well settled by the decisions as would be expected.

In Dillon on Mun. Corp., § 857, it is stated: "A municipal corporation *is not estopped* after a warrant upon its treasury has been issued to set up the defense of *ultra vires or fraud or want or failure of consideration.*" The first case cited in support of the text (Thomas v. Richmond, 12 Wall. 349, 20 L. Ed. 453) does not seem to deal with the question. The other authorities are not presently

available to us. In 19 R. C. L. p. 1014, § 306, it is said: "The doctrine of estoppel by recitals does not apply in the case of un-negotiable bonds or other obligations of a municipal corporation." The case of Gunnison County v. Rollins, 173 U. S. 255, 19 S. Ct. 390, 43 L. Ed. 689, one of the two cases cited to support the text, does not appear to deal with the question. The other case, Goose River Bank v. Willow Lake School Tp., 1 N. D. 26, 44 N. W. 1002, 26 Am. St. Rep. 605, does support the text. A note to Aurora v. Gates, L. R. A. 1915A, page 978, states: "Where the obligations of the municipality are non-negotiable bonds, a purchaser of the same for value, in the open market, cannot invoke for his protection the doctrine of estoppel by recitals as it is generally applied in actions upon negotiable municipal bonds." The authority cited and which supports the statement is Washington County, Neb., v. Williams (C. C. A.) 111 F. 801. The case of Watson v. City of Huron (C. C. A.) 97 F. 449, supports the proposition that, because of the nonnegotiable nature of instruments, the municipality may contradict recitals in the face of same to the effect that they (the warrants) were issued for public improvements, when in fact they were not issued for that purpose.

A leading case upon the question is Mayor of Nashville v. Ray, 19 Wall. 468, 478, 22 L. Ed. 164, wherein, as to the position occupied by the holder of such an instrument, the court said: "He must take it, therefore, subject to the risk that it has been lawfully and properly issued. His claim to be a bona fide holder will always be subject to this qualification. *The face of the paper itself is notice to him that its validity depends upon the regularity of its issue.* The officers of the city have no authority to issue it for any illegal or improper purpose, and their acts *cannot create an estoppel* against the city itself, its taxpayers or people. Persons receiving it from them know whether it is issued, and whether they receive it, for a proper purpose *and a proper consideration.* Of course, they are affected by the absence of these essential ingredients; *and all subsequent holders take cum onere, and are affected by the same defect.*" (Italics ours.) To the same effect are numerous decisions, of which it will suffice to mention the following: Wall v. County of Monroe, 103 U. S. 78, 26 L. Ed. 430; Claiborne County v. Brooks, 111 U. S. 407, 4 S. Ct. 489, 28 L. Ed. 470; Apache County v. Barth, 177 U. S. 546, 20 S. Ct. 718, 44 L. Ed. 878; Field v. Village of Highland Pk., 141 Mich. 69, 104 N. W. 393, 394 (defense that work was not completed); District of Columbia v. Cornell, 130 U. S. 661, 9 S. Ct. 694, 32 L. Ed. 1041; National Surety Co. v. State Trust & Savings Bank, 119 Tex. 353, 29 S.W.(2d) 1027, 1030. The opinion in the last-named case, approved by the Supreme Court, says: "A city warrant is not negotiable commercial paper. It is but *prima facie* evidence that the city is indebted to the payee, in the amount stated in the instrument, and that the city is obligated to the payee to pay said amount. San Patricio County v. McClane, 44 Tex. 392; Leach v. Wilson County, 62 Tex. 331; 15 C. J. pp. 598–602; 2 Dillon Mun. Corp. § 850 et seq. *The warrant imposes no obligation on the city to pay the amount called for, if no liability for the debt evidenced by the instrument really exists.* Nor will any negligent or fraudulent conduct or act of any city agent, in respect to the emission of a city warrant, bind the city to any liability, *by way of estoppel* or otherwise, *if the city receives no benefit from the transaction.* 2 Dillon Mun. Corp. § 857." (Italics ours.)

Among the authorities relied on by appellees are a number of decisions which contain expressions apparently supporting their contentions. Only one of the cases we think can properly be regarded as directly in point. That is the case of City of Gainesville v. Brown-Crummer Inv. Co., 20 F.(2d) 497. Therein the Circuit Court of Appeals for the Fifth District held directly that recitals like those here in city warrants estop the city from defending on the ground of a partial failure of consideration. The cases cited in support of the holding are the following: City of South Houston v. Carman (C. C. A.) 6 F.(2d) 358; Slayton & Co. v. Panola County (D. C.) 283 F. 330; Scott County v. Advance Rumley Thresher Co. (C. C. A.) 288 F. 739, 36 A. L. R. 937; Grimes County v. W. L. Slayton & Co. (Tex. Civ. App.) 262 S. W. 209; Evansville v. Dennett, 161 U. S. 434, 16 S. Ct. 613, 40 L. Ed. 760; City of Belton v. Brown-Crummer Inv. Co. (C. C. A.) 17 F.(2d) 70.

Preliminary to a review of these decisions and others we desire to direct attention to a rule or principle of law which is entirely distinct from estoppel by recitals, but as to which the distinction has sometimes been overlooked. That is the principle well illustrated by the case of Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W.(2d) 841, 845, in which J. T. Sluder was permitted to recover of said city the reasonable value of his services as an attorney, notwithstanding his contract for such services was void and unenforceable. Liability in such cases is predicated upon the theory of an implied contract arising from the equities of the situation, independently of the express but invalid contract. It is the reason or argument to support the principle and not the nature of the cause of action itself which has been confused with estoppel. For instance, as said in the last-mentioned case: "It would be manifestly unjust and inequitable to permit the officers of a city, who have knowledge that a party is performing services under a contract, to sit silently and permit the same

to be fully completed, and, when the city has received the benefit of full performance thereof, to interpose the defense that it should not be required to pay for such benefits because the contract was not made in the particular form required by the charter." But if, because of the number of times such principle of liability has been referred to as an estoppel, we be not justified in saying that it is not an estoppel, that matter is of little practical consequence, since whether such a principle of liability be denominated "unjust enrichment" (Eyer & Co. v. Mercer County, Ky. (D. C.) 292 F. 292, 298) or "estoppel" (Payne v. First National Bank (Tex. Com. App.) 291 S. W. 209), or "implied contract," as we think is its true nature, it is certainly true that an essential and indispensable element thereof is the *receipt of benefits* by the municipality. We confidently believe that "receipt of benefits" is not an element of a true estoppel. Where the principle of estoppel by recitals is applicable, "receipt of benefits" is immaterial. A principle of liability, an essential of which is the receipt of benefits, plainly can have no application to the instant case where there is an entire absence of any benefit received or that will be received by the municipality.

With these observations let us recur to the case of City of Gainesville v. Brown-Crumner & Co., supra, and review the authorities cited in support thereof. We take them up in the order cited as follows:

City of South Houston v. Carman (C. C. A.) 6 F.(2d) 358, 360: A single quotation will show the principle which ruled that decision. "After that new officers were elected by the people, *and they retained and spent the money, the proceeds of the warrants.* The community itself apparently *received full benefit from the amount of money obtained, and it does not appear that the officers of the town converted any of it to their own use.*" (Italics ours.)

W. L. Slayton & Co. v. Panola County (D. C.) 283 F. 330, 333: The court said: "From the funds procured from him [Arlitt to whom the warrants were issued] the county was to, and in fact did, *receive the proceeds* that the commissioners set out to get. *This is an important fact for it distinguishes this case from Watson v. Huron, 97 F. 450, 38 C. C. A., 264.*" (Italics ours.) In the case distinguished there was no benefit received and the difference between negotiable bonds and nonnegotiable warrants prevented the application of estoppel by recitals. The ruling principle of the decision is clearly revealed in the following: " * * * All of the people of the county *accepted the benefits* of this transaction. * * * To the facts, and to the results which the law attaches to such facts, is and should be applied the doctrine of virtue and honesty, which forbids the county from investing its officers with authority to act for it in business relations, *and then, while enjoying the benefits of their wrongdoing, repudiate its obligations to one who has been misled by them.*" (Italics ours.) It is thus made clear that, regardless of what it was called (but which was in fact the principle of liability upon implied contract) the essential ingredient of the cause of action was the *receipt of benefits.*

Scott County v. Advance Rumley Thresher Company (C. C. A.) 288 F. 739, 750, 36 A. L. R. 937: The principle which ruled the decision of this case is stated in the opinion thus: "The theory of these cases is that a corporation such as a county or city should not be permitted to stultify itself *by accepting* property for necessary use, *use it* for years until it is worn out, and then refuse to pay on the ground of a lack of authority to make the contract." (Italics ours.) The court seems to have regarded the principle of its decision as one of ratification or estoppel. But, whatever called, it was in fact that well stated in the quotation from one of the cases cited, namely: "If the city obtain the money of another by mistake or without authority of law, it is her duty to refund it, from this general obligation. If she obtain other property which does not belong to her, it is her duty to restore it, or, if used, to render an equivalent therefor, from the like obligation. * * * The legal liability springs from the moral duty to make restitution." Chapman v. County of Douglas, 107 U. S. 348, 2 S. Ct. 62, 70, 27 L. Ed. 378. In other words, out of the equities of the case the law implies a contract to pay.

Grimes County v. W. L. Slayton & Co. (Tex. Civ. App.) 262 S. W. 209: The warrants involved were refunding warrants. Therefore presumptively the county had received the benefits of the proceeds of the bonds and warrants refunded. Thus the case was within the principle of the cases above reviewed. It is not clear, however, that the warrants were held illegal so as to render necessary the application of the principles either of liability upon implied contract or estoppel. At any rate the decision certainly affords no support for the proposition that a city may be estopped by recitals in nonnegotiable warrants to defend upon the ground of a failure of consideration.

Evansville v. Dennett, 161 U. S. 434, 16 S. Ct. 613, 40 L. Ed. 760: This case involved municipal bonds and therefore could constitute no authority on the question involved in the Panola County Case.

City of Belton v. Brown-Crummer Investment Company (C. C. A.) 17 F.(2d) 70, 71: The court said: "The burden was on the city to prove that recitals contained in them and in the ordinances which authorized them were untrue." The operation of an estoppel by recitals would have been to forbid the city to prove that the recitals were untrue,

and thus the implications of the decision are squarely to the contrary of the proposition to which the case was cited. We therefore feel justified in rejecting the case of City of Gainesville 'v. Brown-Crumner Inv. Co., supra, as controlling authority upon the question at issue.

National Surety Co. v. State Trust & Savings Bank, supra, involved a state of facts where the municipality received no benefits from the warrants. Upon the question at issue we believe the instant case and that case are controlled by the same principles. If recitals in nonnegotiable warrants cannot work an estoppel against the municipality to be relieved from the consequences of fraud or negligence of its own agents as held in that case, then they cannot estop the city to be relieved from the payment of these warrants for which the city has not and never will receive any benefit whatever.

In City of Belton v. Harris Trust & Savings Bank (Tex. Civ. App.) 273 S. W. 914, 923, it was contended upon the authority of Slayton v. Panola County, supra, that the city was estopped by the recitals in the refunding warrants and the ordinances authorizing them from showing that the original warrants were invalid. The contention was perfectly valid had the warrants been negotiable bonds. City of Tyler v. Tyler Bldg. & Loan Ass'n, 99 Tex. 6, 86 S. W. 750. As to that contention Judge McClendon, speaking for the court, first stated the general rule as follows: "The general rule, which seems well established, is that holders of refunding warrants stand in the same attitude as holders of the originals, and invalidity of the latter can be urged against a holder of the former even though he be a purchaser without notice of such invalidity." Then he said: "We have grave doubts, therefore, whether the city would be precluded by the recitals named to set up invalidity in the original warrants." This view was adopted by the Commission of Appeals upon a review of the same case, 283 S. W. 164, 167. Judge Speer, speaking for the court, after sustaining the lower court to the effect that the recitals constituted sufficient evidence to show *prima facie* that the warrants refunded were valid, then said: "*If such facts are to be overcome, the burden lies upon the party asserting the contrary.*" (Italics ours.) Then follows a discussion of the nature of warrants, including the citation of Wall v. Monroe County, supra. This was utterly meaningless and carried a false implication unless a distinction was recognized between negotiable bonds and the warrants. Manifestly if the subject-matter had been bonds there would have been no occasion to say that the burden to show the falsity of the recitals would have been upon the city, since in that case the city would have been precluded from proving that the recitals were untrue.

The foregoing conclusions have been reached, as said before, upon the assumption that the recitals would be effective as to negotiable instruments. It is not necessary for us to decide that question, but, if it be admitted that estoppel by recitals may, under some circumstances, effectively preclude a municipality from contesting liability upon nonnegotiable warrants, we doubt if such would be the case here. Even if the city of Dublin had authority to issue and deliver the warrants before any part of the contract had been performed, as they did, then the recitals do not show that the work had been performed, and hence for the city to show that no work had been done and that, because of a breach of the contract and the lapse of time never would be done, would not be to contradict the recitals. Certainly we think the operation of an estoppel by recitals would be limited to the subject-matter of such recitals. The ordinance providing for the issuance of the warrants shows, we think, that the warrants were to be issued in advance of the performance of the work for which they were given in payment. The ordinance provided that they were to be delivered "to aid in the cost of supplies and labor." Appellee insists that appellant bank was charged with notice of the provisions of the ordinance. This presents a difficult question which we do not feel justified in undertaking to determine. It was so held, even as to negotiable bonds, in the following cases: Mitchell County v. City Nat. Bank, 91 Tex. 361, 43 S. W. 880; Ball Hutchings & Co. v. Presidio County, 88 Tex. 60, 29 S. W. 1042; City of Tyler v. Tyler Bldg. & Loan Ass'n, supra; Commissioners' Court v. Nichols (Tex. Civ. App.) 142 S. W. 37, 41; Winston v. City of Ft. Worth (Tex. Civ. App.) 47 S. W. 740, 746; Headlee v. Fryer (Tex. Civ. App.) 208 S. W. 213, 219. On the other hand, there is eminent authority for holding that, in the case of negotiable bonds supported by recitals such as here, the purchaser is not chargeable with the terms of orders and ordinances. Dillon on Mun. Corp. § 935; Evansville v. Dennett, 161 U. S. 434, 16 S. Ct. 613, 40 L. Ed. 760; Waite v. Santa Cruz, 184 U. S. 302, 22 S. Ct. 327, 46 L. Ed. 552. If it were necessary for us to decide the point, we would feel that we were bound by the decisions of our own Supreme Court. Under this view clearly the recitals in the warrants would not cover the matter of performance of the contract upon which liability upon the warrants was clearly contingent. But whether or not appellant bank was chargeable with notice of the ordinance, we think in the present state of the authorities we are not justified in lending our assent to a proposition that by the simple device of stock recitals such as these nonnegotiable warrants for all practical purposes become the same as negotiable bonds.

At a former day we reversed the judgment of the trial court and gave judgment for the

appellants. A restudy of the question in response to appellee's able motion for rehearing has convinced us that we placed our decision upon an untenable ground. The former opinion will therefore be withdrawn and this substituted therefor. Apprehending that appellees will desire to file a second motion for rehearing, permission to do so is granted in advance. We adhere to the conclusion that the judgment of the trial court should be reversed and judgment here rendered for the appellees, which has been done.

For the reasons above discussed, it is our opinion that the motion for rehearing should be overruled, and it is accordingly so ordered.