

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

December 23, 1952

Hon. J. W. Edgar
Commissioner of Education
Texas Education Agency
Austin, Texas

Opinion No. V-1566

Re: Authority of the Board of
School Trustees of Karnack
Independent School Dis-
trict to pay current funds
to the Federal government
to reimburse lunch program
money fraudulently obtained
by a former superintendent
of the district some four
or five years ago.

Dear Dr. Edgar:

Your request for an opinion of this office
relates to a factual situation wherein a former super-
intendent of the Karnack Independent School District,
now deceased, allegedly submitted false claims to the
federal government asking to be reimbursed for an
amount of money in excess of that due for serving school
lunches. It is also alleged that the superintendent
forged the school board's endorsement on several of the
school lunch program checks, and a substantial amount
of this money was traced to his personal account. The
school district never realized any benefit from such
monies illegally diverted, and the school district has
never ratified in any manner the actions of the school
superintendent. The federal government has made demand
upon the Karnack Independent School District for $1,132.-
56.

The questions presented for determination are:

"1. Under the facts submitted, is the
Karnack Independent School District liable
to the Government for payment of school
lunch program money paid four to five years
ago on misrepresentations and falsifica-
tions of its agent, who diverted the money
fraudulently to his own use? Or stated
another way: Is the school district liable
to the Government for embezzlement and mis-
appropriation of funds obtained from the
Government by its agent, superintendent of

the district, based on false claims of the superintendent of which the board had no knowledge?

"2. If the answer to the above question is in the affirmative, may the school district pay the claim from current or future revenues of the district, such claims admittedly being based on fraudulent acts committed four to five years ago?

"3. If it is your opinion that such claims may be paid from school district funds, what school funds, assuming available funds exist, may be used for that purpose?"

The act setting up the National Hot Lunch Program (42 U.S.C.A. Secs. 1751-1760) declares it to be the policy of Congress, as a measure of national security, to safeguard the health and well-being of the nation's children and to encourage the domestic consumption of nutritious agricultural commodities and other foods, by assisting the states in providing an adequate supply of food and other facilities for the establishment and maintenance of nonprofit school lunch programs. "An examination of the Federal statute creating the lunch program shows that Federal agencies are charged with the duty of keeping the funds devoted to the hot lunch program under surveillance and their misappropriation beyond question would constitute a Federal offense." Hunt v. Allen, 53 S.E.2d 509 (W.Va. Sup. 1948).

An examination of the factual situation presented reveals that the money in question was obtained through the fraudulent practices of the former superintendent, whereby claims were presented to the federal government in excess of the amount actually used in the hot lunch program, and no benefits either directly or indirectly were received by the Karnack Independent School District. This being true, the question is immediately presented as to whether the claim of the federal government is one sounding in tort or one based solely upon contract. Clearly, if the action is one sounding in tort there is no liability on the part of the school district, whereas liability might be established if this be a claim upon a contract. School

districts are public corporations and governmental
agencies exercising a governmental function. Treadway
v. Whitney Independent School District, 205 S.W.2d 97
(Tex.Civ.App. 1947). It performs no proprietary
functions which are separate and independent of its
governmental powers and a school district has no liability
for actions sounding in tort arising out of the performance
of governmental functions. Braun v. Trustees of Victoria
Independent School District, 144 S.W.2d 947 (Tex.Civ.
App. 1938, error ref.) and authorities cited therein;
Att'y Gen. Op. O-443 (1939).

In 1 C.J.S. 1098, Actions, Sec. 44, it is said:

"The distinction between an action in
contract and one in tort is not one merely
of form but is rather one of substance, the
remedy in tort being broader than that in
contract. As indicated by the definitions
previously given in § 1, actions in contract
and in tort are to be distinguished in that
an action in contract is for the breach of
a duty arising out of a contract either ex-
press or implied, while an action in tort
is for a breach of duty imposed by law,
which arises from an obligation created by
a relation, ordinarily unconnected with a
contract, but may arise either independently
of any contract or by virtue of certain con-
tract relations. In the latter, if the
cause of action as stated arises from a
breach of promise it is ex contractu, but if
it arises from a breach of a duty growing
out of the contract it is in form ex delicto
even though it incidentally involves a
breach of contract.

"While the general distinction between
actions in contract and in tort is clearly
defined and well understood, it is often
difficult to determine whether a particular
action is one or the other, particularly
under the code system of pleading, and where
under the circumstances of the particular
case either form of action might be maintained.
A treatment of the distinction between actions
in contract and in tort assumes a twofold
aspect, involving on the one hand a considera-
tion of the essential nature of the cause of

action, as for the purpose of determining
which is the proper or only available form
of remedy, and whether an action which is
clearly in the one form or the other can be
maintained; and on the other hand, particu-
larly where either form of action might be
maintained, a consideration of the question
as to which form plaintiff has in fact
resorted to.  In some cases both features
of this question are involved, and they are
so closely related that they may properly
be, and are, considered together in §§ 45-
51."

It would appear beyond doubt, from your factual
recitation, that the acts of the former superintendent
of the Karnack Independent School District were outside
the scope of his authority.  It is well settled law that
a governmental agency in the performance of a govern-
mental function can be bound only by such acts of its
agent as are authorized by law or by contract.  State
v. Perlstein, 79 S.W.2d 143 (Tex.Civ.App. 1934, error
dism.); Texas Nat. Guard Armory Board v. McCraw, 132
Tex. 613 126 S.W.2d 627 (1939); Charles Scribner's Sons
v. Marrs, 114 Tex. 11, 262 S.W. 722 (1924); Fort Worth
Calvary Club v. Sheppard, 125 Tex. 339, 83 S.W.2d 660
(1935).  In Campbell Building Company v. State Road
Commission, 70 P.2d 857, 864, 866 (Utah Sup. 1937) the
court stated:

"We think that the engineer had no
authority to waive on behalf of the state
the requirements in the written contract.
He undoubtedly had no authority to enter
into a new or different contract, and it
would follow that he had no authority to
waive the provisions in this one.  The con-
tract specified what his duties and powers
were and this was well known to the con-
tractor.  It is generally held that an
architect or engineer in charge of con-
struction work does not have authority to
waive a provision requiring written extra
work orders. . .  The state cannot be held
for the acts of its engineer beyond the
powers conferred by law or the written con-
tract. . . .

"The state cannot be held for any such actions by its employees, even if true, for the reason that it can be held only on the contract and for the acts of its agents and officials pursuant to the contract and not for any unauthorized or malicious conduct which may have resulted in damage." (Underscoring ours.)

In Clodselter v. State, 86 N.C. 54 (1882) the court stated:

"That the doctrine of respondeat superior, applicable to the relation of principal and agent created between other persons, does not prevail against the sovereign in the necessary employment of public agents, is too well settled upon authority and practice to admit of controversy.

"No government has ever held itself liable to individuals for the malfeasance, laches, or unauthorized exercise of power by its officers and agents." (Underscoring ours.)

It is therefore our opinion that the Karnack Independent School District would not be liable for the unlawful acts of its former superintendent, and the claim of the federal government is seemingly based upon an action in tort for which there is no liability on the part of the Karnack Independent School District.

Moreover, the money obtained by the former superintendent under our factual situation was never placed in the depository of the school district. Since the school board never ratified his unauthorized acts and the district never received any benefit from them, there would be no liability for repayment attaching to the district on the ground of estoppel or other similar ground. In First National Bank of Athens v. Murchison Independent School District, 114 S.W.2d 382 (Tex.Civ. App. 1938), the court said:

Hon. J. W. Edgar, page 6 (V-1566)

"Plaintiff's cause of action under its pleading was upon the three instruments executed to the said payee bank, 'in part payment of the purchase price of school furniture and equipment.' The great weight of the testimony established that the defendant district did not purchase the school equipment above recited, with proceeds of funds advanced by the Murchison bank, hence a failure of proof resulted under plaintiff's allegations of liability. Applying the strict rule governing such contracts of public corporations, we conclude that the warrants sued upon by plaintiff, under this record, were unauthorized and created no obligation against the defendant district. 37 Tex.Jur., Schools, §§ 75-100. Nor were there, for the particular years, over and above the amounts necessary to conduct the school, any available funds out of which these debts could be paid. Collier v. Peacock, 93 Tex. 255, 54 S.W. 1025; Warren v. Sanger Independent School District, 116 Tex. 183, 288 S.W. 159; Harlingen Independent School District v. C. H. Page & Bro., Tex. Com. App.,48 S.W. 2d 983; Templeman Common School District v. Boyd B. Head Co., Waco Court of Civ. Appeals, 101 S.W.2d 352. The defense of estoppel does not accrue to the plaintiff bank, no school furniture and equipment having been received by the district, though the warrants and board resolution stated otherwise. City of Dublin v. H. B. Thornton & Co., Eastland Court of Civil Appeals, writ refused, 60 S.W.2d 302, and many cases there reviewed."

In answer to your first question submitted, it is our opinion that no liability attaches to the Karnack Independent School District under the facts by reason of the fraudulent practices of a former superintendent. It therefore becomes unnecessary to answer your other questions.

## SUMMARY

The Karnack Independent School District is not liable to the Federal Government for the repayment of money paid in the administration of the school lunch program upon the misrepresentations and fraudulent practices of a former superintendent who converted the money to his own use.

Yours very truly,

APPROVED:

PRICE DANIEL
Attorney General

J. C. Davis, Jr.
County Affairs Division

Mary K. Wall
Reviewing Assistant

By
Burnell Waldrep
Assistant

Charles D. Mathews
First Assistant

BW:am